READY, Adm'x. *vs.* THOMPSON'S Adm'rs.

1. Where an " additional plea" is filed, by leave of the Court, after a demurrer to several previous pleas, is sustained, the filing such additional plea will not be viewed as an abandonment of the others, first filed—no entry appearing in the record to justify such supposition.

2. Judgments are included in the statute of non-claims, and must be presented to the representative of an estate within the eighteen months prescribed by the statute.

In this case, a *scire facias* was isssued against the administratrix of Ready, to obtain the revival of a judgment against his estate, which had been rendered in favor of Thompson. The judgment was had at the July term of Madison county Court, in 1821; and the *scire facias* was tested the 23d December, 1828. The administratrix, to this proceeding, plead several pleas, the first of which was the statute of non claim. The other pleas avered, as matter of defence, that the defendants intestate was only a surety to the bond, on which the judgment was originally rendered; that the principal, one Prout, soon after the rendition of the judgment, paid to the plaintiff, Thompson, a portion of the claim, in consideration of which the said Thompson, without Ready's consent, released a levy upon Prout's property, by which the whole debt might have been realised ; and that subsequently Prout became insolvent. To these pleas a demurrer was filed, and sustained; and the defandant asked leave to file an additional plea, which the Court granted. This plea avered, that the said Thompson had given time to the defendant, Prout; and there was a replication,

denying it, to which the defendant demurred. The demurrer being overruled, a judgment was rendered in favor of the plaintiff 's representatives, he having died, pending the action.

To reverse this judgment, a writ of error, was taken to this Court; and it was insisted, that the Court erred in overruling the demurrer to the first pleas, and also that to the replication, to the last plea.

Argued by *S. Parsons* and *McClung,* for the plaintiff in error; *Hopkins* and *Thornton,* contra.

TAYLOR, J.—The first question which we have to dispose of, under the view we take of the case, is the effect of the permission granted to the plaintiff in error, who was defendant below, to file the seventh plea.

It appears that six pleas had been previously filed, all of which had been demurred to; and the demurrer sustained. After this, the plaintiff in error applied for permission " to file an additional plea," which was granted.

One of the errors assigned is, the sustaining the demurrers to the pleas.

It has uniformly been decided by this Court, that whenever a plea. is amended, after a demurrer has been sustained to it, and the party abandons his plea; he cannot bring the judgment, upon the demurrer, before this Court, for revision. Was this seventh plea an amendment of those which had been determined to be bad, or, in other words, was it filed in their place, and did the plaintiff in error intend to give up all reliance upon them? The language used

certainly does not convey that idea. For all that appears to us, sufficient reason may have been given to the Court below, to induce the judge, in his discretion, to permit the seventh plea to be filed, without requiring the party to relinquish those which preceded it. It is termed " an additional plea," which it certainly could not have been if there were no other. The phraseology used, conveys to the mind, an intention in those using it, not to abandon the others. If the object had been to substitute the new plea, the usual and proper entry would have been, that the defendant has leave to amend his plea, &c. We therefore think, that the first six pleas were not abandoned.

The first of these pleas is, what is usually termed the statute of nonclaim. That act is to be found in the 337th page of the Digest, and, so far as it is applicable to the question before us, is in the following words, to wit: "all claims against the estates of deceased persons, shall be presented to the executor or administrator, within eighteen months after the same shall have accrued, or within eighteen months after the passing of this act, or within eighteen months after letters testamentary or letters of administration shall have been granted to said executor or administrator, and not after; and all claims not presented within the time aforesaid, shall be forever barred from a recovery : *Provided,* that the provisions of this section shall not extend to persons under age, femes covert, persons insane, or *non compos mentis,* to debts contracted out of this State, nor to claims of heirs or legatees, claiming as such."

It is contended by the counsel of the defendant in

JANUARY TERM, 1833.

55

READY, adm'x vs. THOMPSON's adm'rs.

error, that judgments are not intended to be embraced by this act, that " by the common law, administrators are bound to notice them ; and that they are excluded by the phraseolgy of the act itself, which is, that all claims not so presented, shall be forever barred from a "recovery ;" and no " recovery" is necessary on a judgment, one being already had.

It was admitted, in the reply to this argument, by the counsel for the plaintiff, that, by the common law, representatives are bound to notice judgments ; but, it was insisted, that the comprehensive terms of our statute, include them with other "claims ;" that the policy of our law knows nothing of the marshalling of debts into different classes ; that the security of representatives, requires that the Cours should give this liberal, or rather literal construction to the words employed by the general assembly. That the term, " recovery," does striclty apply to a case like the one at bar, or why is it necessary for the defendants in error, to sue out a *scire facias?*

There certainly is great cogency in these arguments. In England, generally, an application to the Courts of Westminster Hall, will enable a representative to know what judgments there are against the decedent ; but, with us, there are two Courts of record, in every County, and it would be a most onerous duty to require a representative to visit every clerk's office, in the State, and search the records for twenty years back, to ascertain the demands against the estate in his hands. But, even in England, it has been found necessary to enact a statute, for the relief of representatives It is there required, that judgments shall be docketed to themselves ; and un-

56          CASES DETERMINED

READY, adm'x vs. THOMPSON's adm'rs.

less this is done, no representative can be made liable, for paying other debts in preference to them.

With us, the only act on the subject, in aid of executors and administrators, is the statute of limitations, or non-claim. Its terms are certainly very comprehensive: "All claims, against the estates of deceased persons." By what authority can the Courts except judgments? They are certainly "claims"—and to do so, would repeal the statute, *pro tanto.*

It is said representatives have constructive notice of judgments. But what does this prove? Surely not that actual notice may not be required by the statute.

The word "recovery," in the act, it is believed, refers, not to the judgment, but to the money: but even if it relates to the former, some judgment must be "recovered" against the administrator or executor, before payment can be enforced.

In this case, to enable the defendants in error to succeed, there must be a recovery. Wherever there is a lien on the property, left by the decedent, no proceeding by *scire facias* is necessary; but an execution will, at once, effect the object.

Suppose a representative had fairly and honestly administered the estate of the deceased, and it had been nearly or quite exhausted, in paying debts, would it be justice, to bring forward a stale judgment, seven years old, as in this case, or seventeen, as it might be, and compel payment, out of his own means, of the amount the owner of the judgment would have been entitled to. if presented in proper time? It may be answered "yes, if the law so determines." That may be; but we say, the law does not so determine. Judgments come within the mis-

chief intended to be remedied, and within the words of the statute—therefore, they must be presented as other claims.

The case of *Bigger, adm'x* vs. *Hutchings and Smith, adm'rs,*[a] was a good deal analagous to the present.—[2 Stewart, 445] The same plea was filed, and the defendants in the Circuit Court, to prove that their claim had been presented within the time limited by the statute, relied upon the fact, that a previous writ had been issued from the Circuit Court of the same county, in favor of the plaintiffs, for the same claim, which had been served on the defendant, before the eighteen months had elapsed, on which the plaintiffs had taken a non-suit.

The opinion in that case uses the following language, " we are convinced that the presentation of the demand, was not such an one as is contemplated by the statute. The statute declares, that ' claims not presented to the administrator within eighteen months after the grant of administration, shall be forever barred of a recovery," &c.

" The Legislature that enacted the law, intended something more certain and definite than a mere notice that there was a claim against the estate. They clearly intended, that the administrator should be furnished with such vouchers or reasonable evidence, as might induce a belief that the claim was just," &c.

We would say, in this case, that the law intended something more certain, more useful to the administratrix, and better calculated to give her *knowledge* of the " claim," and of the intention of the holder to insist upon its payment, than merely con-

4 s. & p. 8

structive notice, which, in all probability, never was improved to notice, in fact.

The service of the writ, in the case of *Bigger* vs. *Hutchings*, &c., nay, its issuance, which amounted to a *lis pendens*, was at least equal notice in law, to that which was afforded in this.

The Court is not prepared to give an opinion upon the effect of the return of the execution by the direction of the plaintiff below; and thinking it probable that the above view may finally dispose of the case, and that the parties might prefer a decision on the single point, to the case being longer retained here, have determined now to reverse the judgment, and remand the case.