1837.

McIntyre<br>v.<br>Trustees of<br>Union College.

Motion denied, with costs.

---

McINTYRE and others *vs.* THE TRUSTEES OF UNION COL-LEGE and E. NOTT.

Where the complainant makes an officer of a corporation a party defendant for the purpose of obtaining a discovery as against the corporation, no relief either general or special should be prayed against such officer. And the prayer of the bill should be so framed as to show distinctly that the relief sought is intended to be confined to the corporation, and that no relief whatever is to be asked as to the officer of the corporation, at the hearing, even as to costs.

If the bill contains no prayer for either specific or general relief, it is considered as a bill of discovery merely, although the word *decree* is erroneously inserted in the prayer for process of subpœna. But if the bill prays any relief whatever against a defendant who is made a party for the purpose of discovery only, such prayer makes it a bill for relief as well as discovery as to such defendant, and authorises him to put in an answer containing a full defence.

1837.

McIntyre
v.
Trustees of
Union College.

An exception for impertinence will be overruled if the expunging of the matter excepted to will leave the residue of the clause, which is not covered by the exception, either false or wholly unintelligible.

The complainant cannot except to a part of the defendant's answer, as impertinent, which refers to and explains the meaning of a schedule annexed to such answer, without also excepting to the schedule itself as impertinent.

Separate exceptions to the same matter, the one for scandal and the other for impertinence, cannot be allowed; as nothing in a pleading can be considered as scandalous which is not also impertinent.

An exception for insufficiency of the answer will not lie on account of a mere neglect of the defendant to answer as to the correctness of a simple arithmetical proposition which is stated in the complainant's bill.

January 23.

THE bill in this cause was filed by the complainants against the corporation of Union College, and against Eliphalet Nott, who is president of the faculty of the college and also a member of the board of trustees, in relation to various transactions between the complainants, or some of them, and the trustees of the college, and with Dr. Nott, relative to the lotteries in which Yates and McIntyre and the college were interested. The complainants in their bill charged, among other things, that in 1826, Dr. Nott took an unjust and unconscientious advantage of their situation and necessities, when they and their sureties were in iminent danger of being ruined for want of means to meet their engagements with their creditors, to extort from them an agreement to allow an additional per centage to that which they had previously agreed to pay the college upon the purchase of the lotteries, on the amount of tickets sold, as the only terms on which he would consent to raise for them $100,000, which they then needed to relieve them from their pecuniary difficulties. The complainants also alleged that a settlement which was made about two years and a half afterwards between A. McIntyre and Dr. Nott, upon the basis of that agreement, upon which settlement the latter received notes of the firm of Yates & McIntyre to the amount of about $212,000 as the balance then due, was unauthorized by the other members of the firm and by the trustees of the college; and that McIntyre in the settlement of this account acted under a misapprehension of the facts and of his rights. The bill, after charging a variety of pretences on the part of the defendants, who

1837.

McIntyre
v.
Trustees of
Union College.

were alleged to be confederating together and with others to injure the complainants, prayed an answer and discovery from Dr. Nott upon oath, and from the other defendants under their corporate seal, and that the *said confederates* might be decreed to assign and transfer, or deliver up to the complainants to be cancelled, the notes and securities in the bill mentioned and then held by the treasurer of the corporation or some other of the confederates, or for other specific relief; and also for general relief.

To this bill the defendants put in their joint and several answer; to which answer the complainants filed fifty exceptions for impertinence, and twenty for insufficiency. Four of the exceptions were submitted to by the defendants, and the others were referred to a master, who disallowed five of them, and reported that the other sixty-one were well taken. The complainants excepted to the master's report as to the disallowance of the five, and the defendants as to the allowance of the others. The cause was heard before the chancellor upon the several exceptions to the report of the master.

*J. C. Spencer*, for the complainants.

*M. T. Reynolds*, for the defendants.

THE CHANCELLOR. The first thirty-three exceptions for impertinence all depend upon the same principle. These exceptions to the different parts of the joint answer of· the defendants, are exceptions to the same so far as it purports to be the individual answer of Dr. Nott as well as the answer of the other defendants. And the complainants by their exceptions seek to convert this part of the answer into an answer for the corporation only. In this they have proceeded upon the erroneous supposition that Dr. Nott had no interest in the defence of the suit, and for that reason was not entitled to insert any new matters of defence in his answer, but merely such facts and circumstances as were strictly responsive to the charges and allegations contained in the bill. It was not pretended upon the argument that the parts of

1837.

McIntyre
v.
Trustees of
Union College.

the answer referred to in these exceptions were impertinent, and furnished no valid matters of defence, if this was a bill for relief against Dr. Nott as well as against the corporation. For this reason I have not examined this part of the answer for the purpose of determining the question whether the matters referred to in these thirty three exceptions, or any of them, could have been considered as impertinent if exceptions thereto had been taken in a different form. If these matters furnished no valid defence as to the defendants against whom relief was prayed in the bill, and could have no influence upon the decision of the court upon the question of costs, or as to the relief if any which might be given in the suit, they should have been excepted to in the usual form as impertinent; so that the whole of each clause or allegation might have been stricken out of the joint answer of both defendants. The counsel for the complainants is clearly wrong in supposing that this is a bill for relief only against the corporation, and that as against Dr. Nott it is a mere bill of discovery against an officer of the corporation, in aid of the suit. Where an officer of the corporation is made a defendant for the purpose of discovery merely, no relief either general or special should be prayed against him. And the prayer of the bill should be so framed that it will distinctly appear that all the relief sought is intended to be confined to the other defendants, and that none will be asked against such officer at the hearing, even as to costs. If there is either a general or a special prayer for relief which is applicable to the officer of the corporation as well as to other defendants, he is entitled to put in an answer containing a full defence. Otherwise he might be surprised at the hearing by an application for costs, or for some other relief against himself or his property, upon grounds which he might have fully obviated by his answer. It is settled in this court, although I find there are two very recent decisions the other way in England, (*Ambury* v. *Jones, Young's Exch. Rep.* 199, *and James* v. *Herrioit,* 6 *Sim. Rep.* 428,) that if a bill contains no prayer, in the usual form, either for specific or general relief, it may be considered as a bill of discovery merely, although the word *decree* is er-

1837.

McIntyre
v.
Trustees of
Union College.

roneously inserted, in the prayer for process of subpœna, after the word direction; which latter word instead of the former should be inserted in the prayer of process upon a bill of discovery. (*Schroeppel* v. *Redfield*, 5 *Paige's Rep.* 245.) In the case now under consideration, however, it is not a mere mistake in the prayer for process, although such a mistake has actually occurred here. But there is also in this bill a distinct prayer, in the usual form, for both specific and general relief; part of which prayer for specific relief, and the whole of the prayer for general relief, are as applicable to Dr. Nott as to the corporation of Union College. And the bill itself also contains allegations and charges, which if sufficient to entitle the complainants to relief against the college, might also entitle them to relief, to some extent at least, against Dr. Nott personally. Most of the notes and securities received from Yates and McIntyre are stated to have been received by him. Whether they have all been delivered to the treasurer of the corporation, is not stated by the complainants: But as they charge, as a fact within their own knowledge and not upon information and belief merely, that Dr. Nott had no authority from the corporation to make the settlement with McIntyre, in 1828, and that the same has not been ratified or confirmed by the corporation as the act of their agent, the natural presumption would be, until otherwise explained, that Dr. Nott still had the notes taken from McIntyre on that occasion or some of them at least in his possession. And if he did not put in an answer and defend himself against this and other similar charges, the complainants under their specific prayer for relief against him as one of the confedarates, or under their general prayer, might perhaps claim a decree against him personally for the delivering up of these notes and for the payment of the costs of the suit. Under such circumstances it was not only his right but his duty to himself and his family to make a full defence in his answer. The decision of the master as to the first thirty-three exceptions for impertinence was therefore erroneous. Those exceptions must be overruled; and the defendants' exceptions to the master's report in this respect are allowed.

1837.

McIntyre
v.
Trustees of
Union College.

The answer states that the defendant Nott, by virtue of an authority conferred upon him as president of the college by a certain resolution of the trustees, immediately assumed, and during the whole period occupied by the drawing of the lottery under the act of April, 1822, and the several subsequent laws on that subject, with the full assent and approbation of the defendants, continued to exercise the superintendance and direction of all matters pertaining to the interests of the defendants in the lottery. And by the 35th exception for impertinence the complainants seek to strike out from the answer the allegation, or part of the sentence, from which it appears that Dr. Nott continued during the whole period there mentioned, to exercise such superintendence and direction with the *assent and approbation* of the trustees of Union College. This allegation appears to be material to the defence of Dr. Nott at least. And it is also responsive to the bill; as the complainants have charged that as to some of those matters he acted without authority and that his acts in that respect had never been ratified by the trustees. This exception to the answer should therefore have been overruled by the master.

Neither does the subject matter of the 36th exception appear to be impertinent. The complainants allege that they proceeded to the sale of the tickets and the drawing of the lotteries with due dilligence, and that they became embarrassed in consequence of having hastened the drawings, upon the urgent solicitations of Dr. Nott. And they urge that fact as a reason why the agreement of 1826 was unconscientious and ought not to be enforced. In answer to this the defendants say that Yates and McIntyre did not proceed with due diligence, but that the drawings of the lotteries were intentionally delayed for the purpose of facilitating the introduction of foreign tickets into the New-York market through the medium of an office at Jersey city, kept by H. C. & A. J. Yates; and the market on one occasion was left unsupplied for a month. And that when Dr. Nott remonstrated against the delay he was told by Henry Yates, who afterwards became a partner with the other complainants and is now seeking to set aside the agreement of 1826

1837.

McIntyre
v.
Trustees of
Union College.

and the subsequent settlement as unconscientious, that he had consented to the delay for the purpose of enabling Yates and McIntyre to get rid of the tickets in a class of the Pennsylvania Lottery in which they were engaged. The whole of this part of the answer is therefore responsive to the bill. And the declarations of H. Yates, though made before he became a partner in the firm, may now be received to contradict the charges which he makes in the bill, and to displace the equity which he and his co-complainants attempt to set up; at least so far as concerns his own interest. The 36th exception, and also the 49th which relates to the introduction of such foreign tickets into the New-York market, through the medium of an office at Jersey city, as one of the reasons for the delay of the drawing of the New-York lotteries, should therefore have been overruled by the master. Another objection to the 49th exception is that if the words *New-York market*, which are embraced therein, are stricken out of the answer, a part of the same clause, which is not covered by the exception, will be rendered wholly unintelligible, or at least false; as the part of the answer which is left, if it refers to any market, will refer to the general market for the sale of lottery tickets, of course including Jersey city which appears to have been fully supplied, and will not be confined to the New-York market as it was intended to be in the answer of the defendants as now sworn to.

The part of the answer which is covered by the 37th exception contains the admission of J. B. Yates, in one of the verbal communications with Dr. Nott about the time of making the agreement of January, 1826, that the embarrassments under which Yates and McIntyre were then laboring, were produced by the unwarrantable speculations in which that firm had been engaged. This admission is pertinent, therefore, as it contradicts the allegation that those embarassments had arisen from the hastening of the drawing of the lotteries at the request of Dr. Nott. And as the complainants, by the interrogating part of the bill, had required the defendants to set forth whether any and what communication passed between the parties, about that time,

1837.

McIntyre
v.
Trustees of
Union College.

for increasing the amount which in their former agreement they had stipulated to pay, the defendants, in stating the communication which took place between J. B. Yates and Dr. Nott on that subject, had a right to insert any part of the communication which could have a hearing upon the questions in litigation in the cause. And as responsive to this interrogatory the matters covered by the 39th exception are also pertinent. That exception embraces the allegation in the answer, that upon the return to New-York of J. B. Yates after the interview between him and Dr. Nott at Schenectady, about the 4th of January, 1826, both he and his then partner expressed by letter their conviction of the ruin in which they must have been involved but for the timely interference of Dr. Nott in their behalf, *and also their entire approbation of the written memorandum sent by him, embodying the result of that interview;* and that true copies of so much of those letters as relates to the matters of the suit are contained in Schedule *D.* If this exception is allowed it destroys the reference to these letters; in effect striking out of the answer the whole of the letters in schedule *D.* The first of which letters is certainly one of the communications called for by the bill; as it contains a direct reference to the agreement which was executed a few days afterwards, states that they had looked over Dr. Nott's memorandum and saw nothing wrong in it, and that they would write an agreement pursuant to its directions. This letter of the 17th of January, 1824, is also very material to the defence of the defendants; as it shows that the agreement of the 24th of January was deliberately entered into by Yates and McIntyre, and in accordance with a promise contained in that letter; at which time, as the letter shows, they had received the $100,000 in the notes of Mr. James, which Dr. Nott had procured for them, and they then entertained no fears that their credit would not be fully sustained. And although previous to the actual execution of the agreement of the 24th of January, as appears by the answer, the disastrous result of the drawing of another lottery had again placed Yates and McIntyre in jeopardy, so that Dr. Nott was obliged to raise $40,000 more for them upon

1837.

McIntyre
v.
Trustees of
Union College.

the pledge of his own and his wife's property, this letter of the 17th of January is still material to the defence; as it shows that they had deliberately made up their minds to execute such an agreement at a time when they did not suppose it would be necessary to save themselves or their friends from ruin, and when they were under no other *moral* duress than that which they are now under, arising from their previous promises. The 37th and the 39th exceptions should therefore have been overruled by the master; as an exception for impertinence must be disallowed if it cannot be sustained in to to.

The 38th exception covers an allegation, the substance of which is again repeated on the 26th page of the answer, where it is connected with other matters which render it material. And as it is not admissible to insert the same matter twice in a pleading, except in those cases where it may be necessary to qualify or explain something connected with it, this exception was properly allowed by the master.

The 40th exception embraces a part of the answer which refers to the letters in schedule *L.* and connects them with the answer. And if this exception is allowed the schedule which will remain will be rendered perfectly unintelligible. (*Franklin* v. *Keeler*, 4 *Paige's Rep.* 382.) If the whole of the schedule, as well as that part of the body of the answer which explains what it means was impertinent, the whole should have been excepted to; and the exception must be overruled for that reason. And if any of the letters embraced in that schedule were material, which I think is the fact, then the exception should be disallowed on the ground that its allowance would destroy a material part of the answer. The master should therefore have overruled this exception.

The 41st and 42d exceptions were not well taken. The bill charges that Yates and McIntyre made payments, on account of the 6 $\frac{31}{100}$ per cent, mentioned in the agreement of the 30th of May, 1826, which agreement was subsequently modified, to the amount of $192,199,74. And in the parts of the answer excepted to, the defendants admit the complainants paid that precise sum on that account; and show the

1837.

McIntyre
v.
Trustees of
Union College.

manner in which it accrued. In the part of the answer covered by the first exception the defendants show that Dr. Nott received, as the proportion due on that account from the 2d of June, 1829 to the 1st of May, 1830, (after making a deduction on account of an alleged mistake) the sum of $75,557,56. And in the part covered by the last exception they show that he received, as the proportion due under the stipulation of July, 1830, (one of the modifications of the agreement as to the 6 $\frac{31}{100}$ per cent,) the sum of $116,642,-18, after making a deduction which was to have been paid in the Albany lottery lands; which two sums make up the one hundred and ninety two thousand one hundred and ninety nine dollars and seventy four cents mentioned in the bill as paid on that account. These matters being responsive to the bill, the whole cannot be rejected as impertinent, although perhaps each clause of the answer excepted to contained a few unnecessary words. The statement of the amount which Yates and McIntyre were bound to pay over, and the times and manner in which it accrued, was certainly pertinent as matters of defence. The 41st and 42d exceptions should for these reasons have been disallowed.

The 43d, 44th and 45th exceptions, all relate to a single paragraph in the answer. The first covering the whole paragraph, and the two last only a part thereof; one of the latter being for impertinence and the other for scandal. It is evident, therefore, that only one of these three exceptions could in any event be sustained. For if the first was allowed the whole paragraph must be stricken out of the answer, and the other two exceptions would fall of course. And if either of the two last was allowed, the other, which covered precisely the same matter, must fall for the same reason. Seperate exceptions to the same matter for scandal and also for impertinence cannot be taken; for nothing in a pleading can be considered as scandalous which is not also impertinent. In this case, however, independent of the matter of form, the master was right in overruling these exceptions; as the matter excepted to is responsive to that part of the bill which denies that two of the board of managers appointed by the defendants rendered no service, or that the

1837.

McIntyre
v.
Trustees of
Union College.

services of none of them were of any value except those of Henry Yates. And if responsive they are not impertinent. It also may be very material to the defence in this cause, that the defendants should put the fact in issue, if the cause should hereafter be heard on pleadings and proofs, that H. Yates, their agent and treasurer, entered into the copartnership with Yates & M'Intyre, and continued to act in such capacity without the knowledge of the trustees of the college, so that the defendants may not be prejudiced by any act of his as such treasurer or agent; especially as it is alleged that many of the payments of the firm of which he was a member were made to him as treasurer of the corporation. (*See Ramsden* v. *Cass*, 2 *Mad. Pr.* 276.)

The matter of the 46th exception appears to be responsive to a distinct allegation in the bill. The complainants allege that the losses spoken of in the letter of the 4th of January, 1826, were losses which Yates & M'Intyre had sustained in consequence of being obliged to advance for prizes, &c. and by the failure of purchasers of tickets, to pay, &c. But as the letter, though dated on the 4th of January, was not actually written and sent by Yates & M'Intyre until sometime afterwards, the answer, in response to this allegation in the bill, says the defendants are not informed save by the bill itself, whether the particular losses referred to in the letter and those mentioned in the bill are the same. But if they are the same, then they were referred to in the antedated letter as of a time when they did not exist; as they did not occur until after the fourth of January, 1826, the nominal date of the letter, and therefore could not have been the grounds upon which the application for assistance which was actually made on the fourth of January was urged, as stated in a previous part of the bill. That is the obvious meaning of this part of the answer, and if the fact there stated is true, that no such losses had been sustained on the 4th of January, it was very material to the defence that it should appear in the answer. This exception should therefore have been overruled. And the 47th exception should also have been overruled, because the part of the answer covered by that exception is responsive to the alle-

1837.

McIntyre
v.
Trustees of
Union College.

gation that the terms of the letter of the 4th of January were dictated by Dr. Nott; and shows on the contrary that one of the complainants intentionally varied the terms of the letter from the verbal agreement, for the purpose of rendering it more favorable to Yates & M'Intyre.

The matter included in the 48th exception is responsive to that part of the bill relative to the hazards Dr. Nott had run to sustain Yates & M'Intyre and prevent their failure; and shows that he had been the endorser for considerable sums at different banks. As the complainants alleged that Dr. Nott received money enough from them, and had it on hand, to meet all responsibilities and indemnify himself, he had a right to show by his answer what his responsibilities were. That exception should therefore have been overruled.

The part of the answer covered by the 50th and last exception for impertinence, relates to a matter which took place since the commencement of this suit, and is therefore not strictly responsive to the allegation which is met and denied in the first part of the same paragraph of the answer. And as this part of the answer, if put in issue, might lead to the introduction of the report of the committee of the corporation, made *pendente lite*, as evidence of the facts alleged, this exception which would otherwise have been frivolous was properly allowed by the master. (*Hawley* v. *Wolverton*, 5 *Paige's Rep.* 522.)

The 51st exception, which is for insufficiency, was not well taken and should have been overruled. It could not possibly be material to the litigation in this suit to know the precise sums which had been paid or which are still due to Holland and Horsfall, two of the board of managers, for their services. The complainants themselves have considered it impertinent to state how much the defendants agreed to pay to H. Yates the other manager; and have succeeded in getting the fact that he received $13,000 for his services, stricken out of the answer. It is therefore absurd for them to insist upon knowing what has been paid or agreed to be paid to the other two. The answer admits the appointment of the board of managers; and shows that

they performed valuable services. And that is all that can be material in the present suit.

The 52d exception to the answer was not well taken. There is no positive allegation in the bill that the agreement of January, 1826, was not assented to by the trustees by any valid corporate act; but the suggestion of the fact is introduced by way of recital merely, in support of a conclusion of law. And if the complainants wished an answer as to the truth of the facts thus assumed to exist, by the use of the word *inasmuch*, they should have founded an interrogatory upon this recital. (*Mechanics' Bank* v. *Levy*, 3 *Paige's Rep.* 606.) This exception, therefore, should have been overruled by the master.

The form of the 53d exception does not appear to reach any material allegation in the bill. If there is any charge, which is not answered, that a mistake has occurred in the agreement of January, 1826, the exception should be that the defendants have not admitted or denied the existence of the mistake. If the mistake is admitted, the manner in which it occurred is immaterial; and if denied, it will be impossible to state how it happened. This exception is not well taken, and it should have been disallowed.

As to the 54th exception, I have found it utterly impossible, even with the assistance of the able counsel who argued the cause, to form any idea upon what allegation or charge in the bill the exception, or the interrogatory to which it relates, are founded; or to ascertain how it can be material or proper for the defendants, in their answer, to furnish the adverse party with a sworn argument upon the construction of the public laws of the state. The answer explicitly denies the allegations contained in the bill, that Dr. Nott claimed the sum there mentioned as the true sum to which Union College and the other institutions were entitled; and there was no person against whom any valid claim could then have been made. And the defendants, on the 5th and 6th pages of their answer, show, as far as under the circumstances it was possible for any one to state, what was the probable extent of their legal rights, in connection with the other institutions, under the act of April, 1822. So

1837.

McIntyre
v.
Trustees of
Union College,

much of the interrogatory as could be material, and I think much more, is therefore answered; and the exception should have been disallowed by the master.

The 55th exception was fully answered, and therefore was properly overruled by the master. He should also have disallowed the 56th exception, as it calls upon the defendants to answer a mere arithmetical proposition; as whether six and four added together will not make ten. A defendant can never be called upon to answer such an allegation. The master should also have disallowed the 57th exception, as it is wholly immaterial at whose instance the two and a quarter per cent received the particular name of the President's fund. The rights of the parties to this litigation would be precisely the same if, at the request of another person, it had been called the Tutor's fund. The 58th exception should also have been disallowed; as the matter of this exception appears to be sufficiently answered upon the 7th, and 8th pages of the defendants' answer. The 59th exception was not well taken, and should have been disallowed. The allegation in the bill is, that the letter of May, 1826, was written under the dictation of Dr. Nott, who furnished the terms and language; which in this allegation must be understood to mean the same thing. The denial that the letter was written under his dictation, is a substantial denial of the charge. If the complainants meant the court should understand that Dr. Nott drew the letter, and that they only signed it or copied it from his draft, they should have so stated the fact in their bill.

The 60th exception should also have been disallowed. The charge in the bill that the accounts stated wholly depart from and essentially vary the terms of the original and supplemental contracts, is a mixed question of law and fact, which it was impossible to answer in the terms of the charge without attempting to swear to the legal construction of written instruments. But the answer shows what construction the defendants put upon the contracts, and that it was in conformity with such construction of those contracts, as modified by the parties in the subsequent contracts, that the accounts were settled. And that according to that con-

1837.

McIntyre
v.
Trustees of
Union College.

struction they were entitled to the per centage upon the *scheme selling price*, and that the rebate of interest was to be allowed only where the per centum was paid, as is explicitly stated in the agreement of the 24th of January, 1826; upon which principles the accounts were settled. I do not see how it is possible to present these questions any clearer by a further answer. And if the agreement of the 24th of January, 1826, is set aside, for any reason, it will be then for the court to decide whether this account can be opened for the purpose of charging the per centage upon the scheme price, instead of the scheme *selling* price of the tickets; and calculating the rebate of interest as contended for by the complainants in their bill, instead of calculating it upon the principles of the contract of the 24th of January, 1826, upon which the accounts were settled in this respect. The answer at pages 23 and 39 shows that the difference between the scheme price and the scheme selling price, as the two different schemes or estimates of the tickets in the lottery are called in the answer, constitutes the difference between the $4,492,208 upon which the complainants contend the per centum should be computed, and the $4,948,596, upon which, as appears by the account itself, the settlement was made. And the casting of the interest from the date of each drawing also appears upon the face of the account.

The residue of the exceptions, ten in number, are exceptions to the answer of Dr. Nott as an individual, for insufficiency; and they cover precisely the same ground as the ten preceding exceptions to the answer of all the defendants for insufficiency. And they seem to have been put in upon the erroneous supposition that Dr. Nott was not a defendant in the suit, and therefore that the previous exceptions to the answer of *the defendants* did not reach him. But as I have before shown that he was not only nominally, but actually a defendant in the cause, the whole of these exceptions should have been overruled, on the ground that they were irregular or informal and were embraced in the previous exceptions, if the defendants' counsel had not

submitted to answer two or three of them. The others must be overruled.

The five exceptions to the master's report taken by the complainants, and the 37th and 45th taken by the defendants, which object to the allowance of the 38th and 50th exceptions to the answer for impertinence, must be disallowed; and the impertinent matter referred to in the two last mentioned exceptions must be expunged from the answer. Sixty-six exceptions having been taken to the report of the master, and the defendants having succeeded as to 64 of those exceptions, and the complainants only as to 2, the defendants must be allowed sixty-two sixty-sixths of their costs upon the exceptions to the report. And neither party is to have any costs on the reference to the master.