S. W. BUSH, TRUSTEE, APPELLANT, vs. CHARLES S. ADAMS, ADMINISTRATOR, APPELLEE.

1. If the part of an answer excepted to is relevant, or can have any influence in the decision of the suit either as to the subject matter of the controversy, the particular relief to be given, or as to the costs, it will not be held impertinent.

2. An exception for impertinence must be supported *in toto*, and will fail if it covers any part of the answer which is relevant and material.

3. An exception for impertinence cannot be taken to some of the material allegations of a particular defence, and exclude other material averments of the same defence.   All the material allegations or paragraphs of the same defence must stand or fall together.

4. Allegations of an answer will not be struck out as impertinent, unless it is especially clear that they are wholly immaterial or irrelevant.   Where they are not clearly impertinent they should be re-

12

tained, and the court may do justice between the parties in the imposition of costs, at a subsequent stage in the cause.

5. Where a person mortgages his land to secure the debt of another and dies, and the land is an asset of his estate, the mortgage is within the statute of *non-claim*, and must be presented to the administrator or executor within the statutory period to avoid the bar of such statute against an enforcement of the lien of the mortgage.

6. The pendency of a suit of foreclosure at the death of such mortgagor is not a presentation or exhibition of the claim, within the meaning of the statue of *non-claim ;* nor does a revivor of the suit against the personal representative after the statutory period has run, constitute a legal presentation, no effort at reviving having been made within such period.

7. If a vendee of land, remaining in possession, buys in an outstanding incumbrance, he will not be permitted to set up an adverse title under it. The purchase enures to the benefit of the vendor's title, and the vendee can only abate the unpaid purchase money, or in case he has paid this, recover the amount he has expended by action on the covenant broken or other proper remedy.

Appeal from the Circuit Court for Duval county.

On January 19, 1876, the appellant filed his bill, alleging the making of a promissory note by one Kellogg, payable to appellant, as trustee, and that John S. Adams, the testator, became guarantor for the payment thereof, and to secure the payment thereof he, the testator, made a mortgage of a certain piece of land to appellant, Mrs. Adams joining therein for the purpose of relinquishing her dower. A copy of the mortgage deed is annexed. The bill prays a reference to ascertain the amount due, and that a short day may be named for the payment of said amount, and in default of payment the mortgaged premises may be sold to satisfy the same " in such manner as to your honor may seem meet and proper, and in the event of such sale being necessary by the non-payment of the amount so ordered to be paid that all the interest of the defendant * * * may be absolutely

debarred and foreclosed of and from all equity of redemption * * ," and for a judgment for the balance remaining unpaid, for further relief and for a subpœna.

The copy of the mortgage recites that the note is guaranteed by the testator, and covenants to pay the same and all costs, charges, &c.

On the 19th day of January, 1876, a subpœna issued, returnable to the succeeding February rules, and was served on the 27th day of January. At the February rules, 1876, (February 7th,) a decree *pro confesso* was entered by the clerk for want of appearance, and on the 12th day of the same month Judge Archibald referred the case to a master to report the amount due on the note to the plaintiff, " and to tax to him his costs of this suit, and the defendant is to pay unto the plaintiff what shall be reported due to him for such principal and interest, and costs, and thereupon the said plaintiff shall release and reconvey the said mortgaged premises, or such interest as he may have therein," and in default of the defendant " paying * * by the time appointed, * * the said defendant is from thenceforth to stand absolutely debarred and foreclosed of and from all equity of redemption of, in and to the mortgaged premises." On the 21st the master made a report of the amount due, and the clerk's and his own costs.

No further proceedings appear to have been taken until July 23, 1884, when the complainant suggested the death of John S. Adams, and moved that the cause be revived against John S. Driggs, as administrator *de bonis non, cum testamento annexo*, and that such administrator show cause why the cause should not be revived against him. Notice of the motion is acknowledged. Judge Baker, of the Fourth Circuit, being unable to act, it was heard before Judge Vann, of the Third Circuit, who made an order reviving the cause against Driggs, as such administrator, a

copy of his letters as such having been filed, and it appearing from the same that the executrix had died.

On July 23, 1884, a subpœna issued to Driggs, as such administrator, returnable to rule day in August, to answer the bill of complaint exhibited against him by the complainant, and it was served the next day, and he appeared on the 4th day of August.

On September 1st he answered, acknowledging that he is the administrator of the estate of John S. Adams, and stating that the transaction mentioned in the bill transpired during Adams' life-time, and that he does not, of his own knowledge, know anything touching the same, and can, therefore, neither admit nor deny the allegations of the bill, and "that upon information and belief, the indebtedness set up in the bill has been paid, and the mortgage satisfied in full," followed by the usual general denial. The plaintiff filed a general replication on the 18th of September.

On October 6, 1884, Driggs, Adm'r, &c., filed a petition praying leave to file an annexed "supplemental plea." The annexed paper is styled, in its body, a "supplemental answer," and it sets up, "by way of supplement to the answer heretofore filed," that after the decease of J. S. A., letters testamentary were duly granted to Ellen F. Adams, on the 19th of June, 1876, and that on November 24th, of the same year, she published in a newspaper in Jacksonville "notice of her appointment, and notice to creditors to exhibit their claims within the time prescribed by law, according to the statute in such cases made and provided; that the said Ellen departed this life on or about the 5th of June, 1878, and on July 30, 1878, this defendant was duly appointed by the said County Judge administrator *de bonis non* of said estate, and immediately published notice of his appointment and to creditors, according to the statute in

such case made and provided ; and that to the best of this defendant's knowledge, remembrance and belief, the claim set up in the complainant's said bill was never exhibited to the said Ellen F., or to this defendant, until more than two years after this defendant was appointed administrator *de bonis non*, and gave notice thereof as aforesaid." It is sworn to as true to best of defendant's knowledge, information and belief.

On March 5, 1885, leave was granted to " file plea."

The record shows that on January 5, 1885, there was filed by complainant an affidavit, made before a Florida Commissioner in Boston, Mass., that " the mortgage, * * * which was in his posession was lost or mislaid, so that the same is not within his knowledge, custody or control, and that a substantial copy is appended hereto." A copy from the records of clerk's office of Duval county, certified by the clerk, is appended.

On March 10, 1885, the defendant filed an answer to the bill, alleging :

That the transaction alleged occured in the life-time of J. S. A., and that defendant does not know, of his own knowledge, anything touching the existence of the promissory note, nor of complainant's trust relation thereto ; that he knows nothing whatever of the alleged guaranty, nor of the execution of the mortgage by J. S. A., and therefore he demands strict proof by complainant of all said matters and things alleged in the bill.

" Answering said bill upon information and belief," he says that if J. S. A. did guarantee the payment of said promissory note, or if Kellogg refused to pay it, no notice of the non-payment was given to Adams, and " that, as he is advised and believes, and so charges the fact to be, the said Adams was not and never became liable to pay said note, according to the tenor thereof, and according to the true in-

tent and meaning thereof, as provided for in said alleged mortgage;" that (upon information and belief) if the mortgage was executed and the debt not paid at maturity, and notice of non-payment was given to Adams, the debt was satisfied in full and discharged in the life-time of Adams.

Defendant is now, and has been since July 30, 1878, administrator, &c.; that on July 23, 1884, an original subpœna in chancery was sued out in this cause, and served on him on the next day; that J. S. A. died while a resident of Duval county, on April 23, 1876, and his will was probated in the County Court of said county on June 19, 1876, and Ellen F., his widow, and executrix named therein, duly qualified as such executrix, and as such executrix, on the 23d of November, 1876, gave notice to all creditors, legatees and persons entitled to distribution, by advertisement in the *Daily Florida Union*, a newspaper then published in the city of Jacksonville, of said county and State, published once a week for four consecutive weeks, the first publication thereof being on the 24th day of November, 1876, that their claims and demands would be barred at the expiration of two years unless their said claims and demands were exhibited within the said two years, and that the notice would be pleaded against them.

[That defendant is advised and believes, and upon such information and belief states the fact to be that the claim or demand sought to be asserted in and by said bill was never presented to said E. F. A., executrix, as aforesaid, or otherwise exhibited as a claim or demand against said estate in the life-time of said E. F. A.; that no proceedings whatever were had or sought to be had by motion or petition in this court, or otherwise, upon the said suit in the life-time of said J. S. A., after the decree filed herein; that since the death of J. S. A. no proceedings whatever by revivor or otherwise were had or sought to be had by mo-

tion, petition or otherwise against said E. F. A., as executrix or otherwise, in or upon or concerning said suit, or mortgage, or debt, supposed to be evidenced thereby.

Further answering : That since the death of E. F. A., who died June 6, 1878, the claim or demand sought to be asserted, or claimed to be evidenced by said mortgage, was never presented to defendant, nor otherwise exhibited as a claim or demand against said estate ; that defendant had no knowledge whatever that the indebtedness sought to be asserted existed or was claimed to exist ; nor did he know that any suit or proceeding in respect to said mortgage or debt alleged to be evidenced thereby was claimed to exist or to be pending until he was served with a writ, purporting to be a subpœna, to answer the bill of complaint herein, as shown by the original process of file herein.]

That on August 6, 1875, John S. Adams sold and conveyed to E. H. Mason and T. Ritchie, by two deeds, each with full covenants of warranty, (which have been duly recorded,) an undivided half interest in and to the lands embraced in the alleged mortgage, and subsequently Ritchie's interest was sold and conveyed to Harriet J. Mason, wife of E H. Mason ; and thus E. H. Mason and wife became, and are now seised and possessed, and are now in the actual possession of an undivided interest in said land.

[Defendant, upon information and belief, charges the fact to be that within less than one year before the original process of subpœna was issued to him as administrator *de bonis non*, the said E. H. Mason, who was then and is now a resident of Duval county, desiring to negotiate a loan upon the predicate of said undivided interest * * so acquired by himself and wife, an abstract of title to his said interest was required to be made up, and the inquiry disclosed the presence upon the record of said alleged mortgage not cancelled or satisfied of record, and there-

upon, as this defendant is informed and believes, and charges the fact to be, the said Mason, himself or agent, put himself in correspondence with the said complainant in reference to said alleged uncancelled mortgage; whereupon, said Mason, while so holding the lands upon which said indebtedness was claimed to create a lien, by purchase either to himself directly or to another for him, for some inconsiderable sum, largely less than the face value thereof, acquired all the right, title and interest of complainant in and to the said pretended mortgage indebtedness, and the pretended mortgage security; and so it is the said Mason, holding an undivided interest in said lands, became, or sought to become, also the beneficial owner and holder of said mortgage indebtedness, if the same was an existing indebtedness at the time it was sought to be transferred by said complainant to Mason. And defendant says that if said pretended indebtedness was a valid subsisting indebtedness at the time it was so transferred to said Mason, the sole operation and effect of said transfer was to extinguish the incumbrance created by said mortgage on said lands, the said Mason being thereby remitted to his action on said covenants for the sum so paid by him to extinguish said incumbrance.]

The answer is sworn to by defendant as true of his own knowledge, except as to matters that are therein stated on information and belief, and as to those he verily believes it to be true.

On the 10th of March, aforesaid, an order requiring further testimony as to the re-establishment of the mortgage was made.

On April 2, 1885, the plaintiff, after obtaining leave of the court, filed exceptions to the answer filed March 10th.

The portions of the answer excepted to are those included in brackets. The ground of exception to each por-

tion is impertinence, and it is prayed that they be struck out.

On May 4th the exceptions were set down by plaintiff for a hearing.

On June 17, 1885, the plaintiff suggested, upon the record, that Driggs had been removed, and Chas. S. Adams appointed administrator, &c., in his place ; and on the 23d of the same month an order was made that the cause proceed in the name of said Adams, as such administrator.

On June 23d an order overruling the exceptions was entered, and on July 7 the plaintiff appealed from such order.

The petition of appeal is confined to this order, and does not allege error outside of it.

*Geo. Wheaton Deans* for Appellant.

*A. W. Cockrell & Son* for Appellee.

MR. JUSTICE RANEY delivered the opinion of the court :

This case comes before us on an appeal from an order made by a Circuit Judge, sitting in chancery, overruling exceptions to an answer. The ground of the exceptions is impertinence.

If matter not material, as a defence or which is irrelevant to the case made by the bill, is stated in an answer it will be struck out, on exception being taken thereto, as impertinent. Sommers vs. Torrey, 5 Paige, 54. Chancellor Kent, in Hood vs. Inman, 4 J. C. R., 437, held upon exceptions to an answer, that pleadings should consist of averments or allegations of facts, stated with as much brevity and precision as possible; not of inference or argument; and that impertinence in pleadings consists in setting forth what

is not necessary to be set forth, as stuffing them with recitals and long digressions as to matters of fact wholly immaterial. The substance of a power of attorney was accurately stated in the bill, and the answer set it up, *in haec verba*, not changing the legal effect as given in the bill. To set out at length the power was held impertinence, the defendant not being requested to do so. An answer or a bill ought not ordinarily to so set forth a deed; it is sufficient to set up so much thereof as is material to the point in question. The other exception was to matter held to be argumentative, rhetorical, irrelevant, and, consequently, impertinent. The same chancellor in another case held the best rule for ascertaining whether matter be impertinent is to see whether the subject of the allegation could be put in issue, or be given in evidence between the parties; also that an answer ought not to go out of the bill to state what is not material or relevant to the case made by the bill; that long recitals, stories, conversations and insinuations tending to scandal are impertinent; and likewise facts not material to the decision. Woods vs. Morrel, 1 J. C. R., 103. If the matter of an answer is relevant or can have any influence in the decision of the suit either as to the subject matter of the controversy, the particular relief to be given or as to the costs, it is not impertinent. An exception for impertinence must be supported *in toto*, and if it includes any part of the answer which is relevant and proper the exceptions must fail altogether. VanRensselaer vs. Brice, 4 Paige, 173; 1 Beavan, 571; 2 Tennessee Chan., 595–6; 1 D. C., P. & P., 352. An exception to an answer for impertinence will be overruled if the expunging of the matter excepted to will leave the residue of the clause which is not covered by the exception either false or wholly unintelligible. Such an exception will not lie to that part of an answer which refers to and explains the meaning of an annexed

schedule, without including the schedule also.  McIntyre
vs. Trustees of U. College, 6 Paige, 239.  Where an excep-
tion for impertinence would mutilate the answer if allowed,
by breaking up sentences or clauses which ought to stand
or fall together, it should be disallowed.  Franklin vs. Kee-
ler, 4 Paige, 332.  A few unnecessary words in an answer
do not render the pleading impertinent, except where they
will lead to the introduction of improper evidence by put-
ting in issue matters which are foreign to the cause.
Gleaves vs. Morrow, 2 Tenn. Chan. Repts., 592 ; Hawley
vs. Wolverton, 5 Paige, 522.  In Wood vs. Mann, 1 Sum-
ner, 578, Judge Story held impertinence to be any matters
not pertinent to those points which are properly before the
court for decision at any particular stage of the cause, and
struck out as such part of *answer* traversing the allegation
of citizenship in the bill, such defence being properly mat-
ter of a plea in abatement.  In Mozena vs. Bruckner, 3
Tenn. Chan., 161, allegations of the answer which, though
capable of sustaining an independent action, were not
proper matters of set off to the bill, even by cross bill, were
struck out as impertinent.  See also Spaulding vs. Fersell,
62 Me., 319.

It is a well established rule, however, that allegations
will not be struck out as impertinent unless it clearly ap-
pears that the matter is wholly immaterial or irrelevant.
If matter is erroneously struck out as impertinent the error
is irremediable ; whereas, on the other hand, if it is not
struck out the court may do justice between the parties in
the imposition of costs.  Story's Eq. Pldgs., §267.  As to
the first exception in Hood vs. Inman it was remarked by
the chancellor that the objections to unnecessary folia may
be taken on the taxation of costs.  " The court," says the
vice-chancellor, in Davis vs. Cripps, 2 Y. & C., 443, " in
cases of impertinence ought, before expunging the matter

alleged to be impertinent, to be especially clear that it is such as ought to be struck out of the record, for this reason, that the error on one side is irremediable; on the other, not. If the court strikes it out of the record, it is gone, and the party may then have no opportunity of placing it there again; whereas, if it is left on the record, and is prolix or oppressive, the court, at the hearing of the cause, has power to set the matter right in point of costs.   *   * It ought to be clear to demonstration that the matter complained of is impertinent, before that which, if wrong is irremediable, is done." Parker vs. Fairlie, 1 S. & S., 295; 1 Turner & Russell, 362. The court should always give the answer a liberal consideration on the point of irrelevancy and consider whether it can have any real and proper influence upon the suit, having regard to the nature of it as made by the bill; and if the matter is relevant or can have any influence in the decision of the suit, either as to the subject matter of the controversy, the particular relief to be given, or as to costs, it is not impertinent. If the matter may be material the exception will not be allowed; it must be clear that the matter cannot be material to the defendant's case. 1 J. C. R , 106; 4 Paige, 174, 177; Chapman vs. School District, 1 Drady, 108; Tucker vs. Cheshire R. R. Co., 21 N. H., 29; Notes to Equity Rules, 26 and 61, in Jones' Rules of Federal Practice.

These principles are the test by which the complainant's exceptions are to be tried. The parts of the answer to which the exceptions respectively apply are enclosed in brackets in the statement of the case.

The theory upon which counsel for complainant founds his first exception to the paragraphs covered thereby, is that the statute of non-claim does not apply to a claim secured by mortgage, in so far as the enforcement of the claim against the property mortgaged is concerned. It is

not asked, he says, that the representative of the estate pay anything, but is only desired that he appear, if he desire, and defend the suit.

It is settled that lands of an intestate or testator are in this State assets in hands of an administrator or executor, and that a mortgage upon real estate is not a conveyance of the legal title, but only a specific lien upon the property. The title is divested only by a sale under a decree of a competent court, and the mortgagor as against an ordinary mortgagee holds the legal title and possession subject, however, to the mortgage lien until such sale is consummated. Sanchez vs. Hart, 17 Fla., 507 ; Willard vs. Whitlock, 18 Fla.. 156 ; McMahon vs. Russell, 17 Fla., 698.

Upon the death of Adams, the testator, the possession of real estate, which is the subject of this controversy, passed as assets to his executrix, if it had not been previously conveyed or disposed of by him. Of course the conveyance of an undivided half of the land mentioned in the paragraph covered by the *second* exception is not to be considered *now.* In the hands of such executrix, or any succeeding representative, the land was subject to the mortgage lien, and such executrix or representative pending the administration was an indispensable party to any proceeding to enforce the claim or foreclose the mortgage. After a careful consideration of the authorities which we have been able to find bearing upon the subject, the conclusion we reach is that when by law lands are assets of an estate, and the mortgagor dies without having disposed of the parcel mortgaged, and it is a part of his estate, the statute of non-claim, as usually framed, is as applicable in its requirements to the preservation of the lien of the mortgage against the parcel of land as it is to the preservation of the claim against the general assets in case the mortgage security should prove inadequate.. The views which might upon

a superficial view be thought to hold differently will be found upon close inspection to recognize the above rule. They are cases where the title to the property had previously to the mortgagor's death passed to a stranger against whom the holder of the mortgage claim was enforcing the mortgage, or where the mortgaged property did not upon the mortgagor's death become a part of his estate, as where it was homestead property; or where one has mortgaged his property to secure the debt of another, and the latter has died, and it is sought by the former to defeat the mortgage by reason of a failure of the creditor to present the claim to the representative of the deceased within the statutory period. Graham vs. Vining, 2 Tex., 433; Duty vs. Graham, 12 Texas, 427; Ellison vs. Halleck, 6 Cal., 386; Ellis vs. Polhemus, 27 Cal., 350; Sichel vs. Carillo, 42 Cal., 493; Schadt vs. Haffe, 45 Cal., 433; Harp vs. Callahan, 46 Cal., 222.

The purpose of the statute of non-claim is to require a presentation within the period it prescribes of all claims against the estate of the decedent, in order that the representative may know what they are, provide promptly for their payment, and turn over the balance of the estate to the heirs and distributees or devisees and legatees, discharged from and quieted as to all claims not so presented accruing in the decedent's life-time. A failure to present within the statutory period a claim accruing against the decedent in his lifetime does not merely postpone its payment to those claims presented, but it virtually destroys it and operates *pro tanto* to the advantage of the beneficiaries of the estate. Amos vs. Campbell, 9 Fla., 187. The statute applies to all " debts and demands of whatever nature against the estate of any testator or intestate," and the notice is to all " creditors," &c. The fact that a particular portion of the land of the decedent's estate

has been pledged by him in his life to the payment of a debt or demand has not been made an exception upon the requirements of the statute as to presentation.   The fact that a mortgage is an instrument entitled to record, or has been actually recorded, makes no difference.   Constructive notice, if we may use such a term in this application, is not sufficient; a judgment against a decedent is as much within the statute as an open account or a promissory note.   Where the claim is in existence at the time of the decedent's death, and does not arise until after (as in May vs. Vann, 15 Fla., 553, and Gibson vs. Mitchell, 16 Fla., 519,) the statute applies to the enforcement of it as against the estate.   If it applies to judgments which are a lien upon all the real estate, as it does, (Union Bank vs. Heirs of Powell, 3 Fla., 195, 197; Ready vs. Thompson, 4 Stew. & P.. 52,) we cannot see why it should not hold as to a lien upon part of the land.   The policy of the legislature requires action upon the part of the creditor to preserve his claim, and want of such action does not find a substitute in the mere knowledge, though actual, of the administrator or executor in any case.   Fillyau vs. Laverty, 3 Fla., 106 ; Sanderson vs. Sanderson, 17 Fla., 852; Ellison vs. Allen, 8 Fla., 206 ; Jones vs. Lightfoot, 10 Ala., 17.

It is further contended in support of the first exception that the pendency of the suit of foreclosure against the testator, John S. Adams, in his life, and the subsequent revivor under the 38th Equity Rule is a sufficient compliance with or answer to the statute of non-claim.   Looking at the parts of the answer excepted to we find their substance to be that no revivor proceedings against Ellen F. Adams, his executrix, were had in her life-time; that the claim was never presented to her ; that she died June 6, 1878, and the claim was never presented to Driggs, administrator *cum testamento*, and that he had no knowledge of it or of the suit against

the testator until he was served with the subpœna on July 24, 1884. If these were all the allegations in the answer upon the subject of a non presentation under the statute of non-claim, there would hardly be any room for a discussion of it, nothing even to base the presentation of views made by counsel for appellant upon, for in the allegations embraced by such exception there is no allegation of any publication of notice under the statute, nor any statement of when Mrs. Adams qualified as executrix, or Driggs as administrator *cum testamento*. A party cannot except to some of the material allegations of a particular defence and thus cut off the defendant from other equally material averments. The separate paragraphs constituting one defence must stand or fall together. They cannot be thus separated. Franklin vs. Ruter, *supra*. In the paragraph of the answer immediately preceding the first one included in the first exception it is alleged by Driggs, who made the answer, that he is and has been since July 30, 1878, such administrator; that the testator's will was admitted to probate in the County Court of Duval county June 19, 1876, he having died April 23, 1876, and that the executrix on the 23d of November, 1876, gave the notice to all creditors, legatees and persons entitled to distribution, by advertisement in the *Daily Florida Union*, a newspaper then published in the city of Jacksonville, in said county, (which notice was published once a week for four consecutive weeks, the first publication being on the 24th day of said month,) that their claims would be barred at the expiration of two years unless presented within that period.

The argument by counsel of the point now under consideration, as well as the one as to a mortgage claim not being within the statute of non-claim, has not excluded, but has assumed a publication; and the applicability of the statute as a defence cannot properly be argued unless a

. Bush, Trustee, v. Adams, Administrator—Opinion of Court.

compliance with it by the representatives of the estate is assumed.   There is, we may remark, a very radical difference between the statute of our State and that of Alabama upon the point of publishing the notice for presentation of claims.   Here it is an indispensable element of the bar which the statute was designed to create, as all our decisions indicate ; it is a proviso in the statute.   In Alabama the provision as to publication is not a proviso, and is held to be merely directory, and the statutory period begins to run from the grant of letters, though no publication be made.   Thrash vs. Sumwalt, 5 Ala., 14, considering the point as argued, and *assuming* as has been done in the argument without finally committing ourselves, that no further publication by Driggs, as administrator *cum testamento annexo* was necessary, and that after the death of the executrix the statute resumed its course from the time of the qualification of Driggs.   We do not think that a revivor of the suit on July 23d, 1884, with service of subpœna the next day, as referred to by the part of the answer excepted to and shown by the record, is a timely presentation.   In Ellison vs. Allen, *supra*, it is held that the bar begins to run from the expiration of the four weeks publication of the notice.   Over seven years and a half elapsed after the expiration of the four weeks notice before the service of the subpœna on Driggs, and the same period before, as appears by the record, there was even a suggestion of Adams' death.   In the meantime the complainant has remained entirely inactive.

The mere pendency of a suit at the testator or intestate's death, has nowhere, so far as our investigation has disclosed, been held to be a presentation of a claim under the statute of non-claim.   In Fillyau vs. Laverty, *supra*, Judge Hawkins, speaking for the court, said that mere

13

knowledge upon the part of the executor or administrator of the existence of the claim was not enough ; that the party holding the claim must pursue some measures to present his demand and not remain passive or sleep upon his right, but that the bringing of a suit in equity or action at law would be regarded as equivalent to an actual presentation, and in Ellison vs. Allen, where a defendant after the service of process in an action instituted against him died, and the plaintiff afterwards, before the expiration of the time limited by the statute for the presentation of claims to the administrator asked for and obtained an order for a *sci. fa.*, to make the administrator a party, it was held that the order thus obtained was equivalent to and dispensed with an actual presentation of the claim. In the opinion, after noticing approvingly the views announced by Judge Hawkins, it is remarked that *in the absence of proof that due diligence had been exercised,* or where there is ground to suppose that notice of the demand had been intentionally suppressed, the court would not hesitate to enforce the bar ; but where it is made manifest, as in that case, that the claimant has exercised the utmost diligence by demanding continuously, from term to term, the process of the court, it would ill comport with justice and equity that he should be barred of his just rights by two rigid an adherence to the letter of the law. The plaintiff had here at seven different terms obtained orders for original, alias and pluries writs of *sci. fa.* The last writ was served after the expiration of the statutory period.

In the case before us there has been no diligence, but an entire want of it ; not even an effort or an intention to revive the suit during seven years and a half is shown ; more perfect, if not persistent, passiveness could hardly be shown. If there was anything to bring it within the principle of the case of Ellison vs. Allen, we should feel it to be our

duty to do so, yet we think that the doctrine of the latter case is as liberal as the terms and policy of the statute will sustain. In Alabama service of a previous writ within the statutory period, and on which a non-suit was taken, was held in a subsequent action not to be a sufficient presentation. Bigger vs. Hutchins, 2 Stewart, 445, and in Jones vs. Lightfoot, 10 Ala., 17, where a *sci. fa.* was issued, but never returned, it is said that service of a *scire facias* upon a personal representative to revive either a judgment or a suit in progress within the time would be a presentation, but that the effect of the attempt to revive the suit by *scire facias*, instead of by bill of revivor, need not be considered, and that as the bill of revivor was not filed till after such period had expired, the plea of the bar was good; in Travis vs. Tartt, 8 Ala., 574, that where a creditor omits to proceed within the period against the personal representatives of one deceased, (a defendant,) and omits also to present his claim, the bar is good ; and in Garrow vs. Carpenter, 1 Porter, 359, where the case of Bigger vs. Hutchins, is not altogether commended, though it may be in Jones vs. Lightfoot, a revival against an administrator of a suit begun against the intestate and prosecuted until abated by the production of an order of insolvency, was held sufficient to take the demand out of the statute. In so far as there is anything in these Alabama decisions inconsistent with the former decisions of our own court, we are not and should not be influenced in reaching our conclusions. There is nothing in either which sustains the appellant in view of the facts before us.

The substance of the paragraph covered by the second exception is that within a year before July 23, 1884, the date of the issue of the subpœna to Driggs, administrator, one E. H. Mason, desiring to negotiate a loan upon " his said undivided interest in said land," discovered on the re-

cords the mortgage in question uncancelled, and opened correspondence with the complainant as to it, and while so holding the land acquired the plaintiff's interest in said mortgage security by purchase to himself directly or to another for him for some inconsiderable sum, largely less than the face value thereof, and that Mason, thus holding an undivided interest in the land, became or sought to become the beneficial owner and holder of said mortgage indebtedness at the time it was sought to be transferred by complainant to Mason, and that the effect of the transfer was to extinguish the incumbrance and remit Mason to his action on " said covenants."

Just preceding the above paragraph is one in which it is alleged that on August 6, 1875, the testator sold and conveyed to said Mason, and to one Ritchie, by two deeds, each with full covenants of warranty, an undivided half interest in the lands, and subsequently Ritchie's interest was conveyed to Mason's wife, and thus Mason and wife are now seised and possessed, and are now in the actual possession of the undivided one-half interest.

It is evident from what we have said in discussing the former exceptions that these two paragraphs cannot be separated.    The one excluded from the exception shows that Mason's title to part of the land is direct from the testator, under full covenants of warranty, and Mrs. Mason's is from the testator through Ritchie.

A vendee remaining in possession under his purchase cannot set up an outstanding title in a third person which he may have purchased.    Greeno vs. Munsen, 9 Vert., 37 ; Larken vs. Bank of Montgomery, 9 Porter, 434.    Nor if he buys in an outstanding incumbrance will he be permitted to set up an adverse title under it against his vendor, but the purchase enures to the benefit of the vendor's title, and the vendee can only abate the unpaid purchase money, or,

in case he has paid this, may recover the amount he has expended in the purchase of the incumbrance by action on the covenant broken, or (in Mississippi) assumpsit. The vendee cannot use the title or incumbrance purchased to the annoyance of him under whose title he entered. Equity will also lend aid for remuneration. Delavergne vs. Norris, 7 John., 358 ; Stanard vs. Eldridge, 16 John., 254 ; Stewart vs. Drake, 9 N. J. Eq., 139 ; Devenport vs. Bartlett & Waring, 9 Ala., 79 ; Hardeman vs. Cowan, 10 S. & M., 486 ; Champlain vs. Dotson, 13 S. & M., 553 ; Meadows vs. Hopkins, 33 Am. Decis., 140, s. c. Meigs, 181 ; Fowler vs. Cravens, 3 J. J. M., 428 ; Morgan's Heirs vs. Boone's Heirs, 4 Monroe, 291. Kirkpatrick vs. Miller, 50 Miss., 521, 526 ; Dyer vs. Britton, 53 Miss., 270 ; Prescott vs. Freeman, 4 Mass., 627 ; Norton vs. Babcock, 2 Metcalf, 510.

The real party in interest in the prosecution of this suit, so far as the disposition of this exception is concerned, is Mason. He holds, according to the allegations of the answer which for the purposes of the exception are to be taken as true, an undivided interest in the land under *full covenants* of *title from* the *testator*, and *is in possession ;* and hence, as against this interest in the land, he cannot enforce the mortgage, but his claim is against Adam's estate for reimbursement. To the extent then of preventing a decree of sale, and a consequent sale of this undivided interest, without saying anything as to Mrs. Mason's interest, we think the allegations covered by the exception taken in connection with those of the immediately preceding paragraph are not impertinent.

Whether or not there has been in fact, or is in law, upon the face of the allegations excepted to, considered either alone or in connection with the preceding paragraph, any extinguishment or merger of the lien of the mortgage, so

far as the interests in the land other than that purchased by Mason himself, it is not necessary that we should say anything, nor is anything we have said to be taken as having any bearing whatever upon such questions.

These can be disposed of by the chancellor at the proper time.

From what we have said it is plain that the exceptions should have been overruled, on account of covering only a part of material allegations as to the same matter, if considered as they are really framed ; and if considered as extending to all the allegations concerning the same subject matter or defences, and from which the argument has not been excluded, they should have been overruled for other reasons indicated above.

Where an exception is to an allegation which is both prolix and immaterial it will be sustained.

The order appealed from will consequently be affirmed, and it is so ordered.