## Oscar Fillyau and Adna, his Wife, Appellants, vs. Henry Laverty, Appellee.

When a bill is filed by a creditor of a partnership against the representatives of a deceased partner, the surviving partner being interested in taking an account, should be made a party.

In equity, partnership debts are joint and several, and the creditors of a partnership may proceed at law against a surviving partner ; and in equity, against the estate of the deceased partner, whether the survivor is insolvent, or not ; and they may, at their option, do the one or the other.

The statute which bars all debts and demands of whatsoever nature against the estate of any testator or intestate, unless the same shall be exhibited within two years to the executor or administrator, provided the executor or administrator gives the notice required by said statute, prescribes a rule which must be rigidly observed. It is, in effect, a statute of limitations passed for the security of the personal representative—for the benefit of the heirs and distributees, and intended to effect a speedy and final settlement of estates. This statute requiring the exhibition by a creditor of his debt or demand within two years from the time of the granting of letters testamentary or of administration, is as obligatory in a Court of Chancery as at law.

There should be actual presentation of the claim within the time prescribed, or something done equivalent to it ; but the presentation need not be in any particular form. The object is to give notice of the existence of the demand. The bringing of a suit would be sufficient.

Debts not due, as well as those due, are required to be presented.

Appeal from decree of the Circuit Court of the County of Gadsden, pronounced by the Hon. Thomas Baltzell, Judge of the Middle Circuit, at the Fall Term, 1849.

Henry Laverty, who was complainant in the Court below, on the 3d day of June, 1844, filed his bill against Banks Meacham, administrator, and Oscar Fillyau and Adna, his wife, heirs and distributees of William D. Harrison, deceased, to recover of his estate the amount of a partnership debt of the said Harrison and one Wilder, who were in the life-time of Harrison, partners in trade.   This partnership debt was evidenced by the following note, viz :

"New York, March 23, 1836.

"$1,975 22-100.   Twelve months after date, we promise to pay to the order of Laverty, Cutter & Co., nineteen hundred and seventy-five twenty-two one-hundredths dollars.   Value received.

(Signed,)   HARRISON & WILDER."

This note was endorsed by Laverty, Cutter & Co., the payees, to the appellee.

Wilder, the surviving partner of the firm of Harrison & Wilder, was sued at law on the note, and judgment was recovered against him on the 8th day of December, 1840, for the sum of $2,487 89-100, in the Superior Court of Franklin County.

The bill represents that writs of execution were sued out by complainant against William H. Wilder, to obtain satisfaction for said judgment, but that neither complainant nor the ministerial officers of said Court had been able to find any effects of the said Wilder, or of the said firm of Harrison & Wilder, in the hands of the said Wilder, or any other person, with which to satisfy said judgment in whole or in part, and that said writs had been returned " No property found.".

On the 14th of September, 1844, the defendant, Meacham, filed his plea of a discharge from his said administration, which was, on the 19th July, 1847, after argument, overruled, and the case ordered to stand over for his answer, which was subsequently filed.

Fillyau and wife filed their answer on the 13th of September, 1844.

The cause was argued in July, and the decree was pronounced at the last Fall Term of Gadsden Circuit Court, ordering the payment by the defendants, Fillyau and wife, of the appellees' demand, and dismissing the bill as to defendant, Meacham.

10

The answer of Meacham insists that Wm. H. Wilder, named in complainant's bill as survivor of the firm of Harrison & Wilder, should have been made a defendant; and the answers of all the defendants admit the existence of said firm at the time of the date of the note, March the 23d, 1836, and that Harrison died in May of the same year. But they set up as a defence to the claim of complainants against the estate of Harrison, that letters of administration were granted to defendant, Meacham, on the 16th day of July, 1836, and that he did, in accordance with the requisitions of the statute in such case made and provided, entitled an "Act concerning wills, letters testamentary, letters of administration, and the duties of executors, administrators, &c.," by advertisement, dated July 23d, 1836, published in a newspaper, give notice to all persons having any claims against the estate of William D. Harrison, deceased, to present the same within the time prescribed by law, or that the recovery of the same would be forever barred; that this notice was duly published for the time required by law, and that no claim or demand was ever presented to the administrator by complainant, or by the said Laverty, Cutter & Co., or by any other person for them, or either of them, against the estate of the said Harrison, at any time within two years (the time required by law) from the taking out of said letters of administration. Several other matters of defence were also set up and relied upon by defendants in the Court below; but those already stated are believed to be the points presented for the consideration and judgment of this Court.

*Thompson,* for appellant :

As to the first point, William H. Wilder, the surviving partner, is a necessary party, who should have been joined as interested in taking the account, although no decree could be had against him. It is believed there is no conflict of authority on this point. It is in conformity with the general rule of equity pleading, that all persons who are or may be interested should be joined. Story on Partnership, 515. Story Eq. Pl., 157. Wilkinson vs. Henderson, 1 Mylne & K., 582, 588. Holland vs. Prior, 1. ibid, 237, 240. Devaynes vs. Noble, 1 Meri., 539, 572. Pierson vs. Robertson, 3 Swanst., 139. Nelson vs. Hill, 5 How. S. C. R., 127.

But the other and most important point we present, is, the statute

of non-claim for two years provided by the 39th section of the act of November 20, 1828.

The provision is, " that all debts and demands of whatsoever nature against the estate of any testator or intestate which shall not be exhibited within the said two years shall forever afterwards be barred." The only saving is as to *femes covert*, infants, persons of unsound mind, or without the United States, in the military or naval service thereof during war. Thomp. Dig., 206.

The condition on which the bar is made to depend is, that the Executor or Administrator give notice in some Gazette for four weeks, that the bar will be enforced unless the claim or demand be exhibited within the period of two years limited. Idem.

The notice in this case was published in strict conformity with the statute.

Administration was granted to the defendant, Meacham, on the 16th July, 1836, and the first publication of the notice to creditors was on the 23d July, 1836.

The first notice of the present claim is alleged by the complainant in his bill to have been made after the return of *nulla bona* on the *fieri facias* issued against Wilder upon the judgment in Franklin County, which appears from the record filed to have been in December, 1841; then he charges, that "he made known to defendant, Meacham, the existence of the claim and demanded payment."

If this had been done immediately upon the return of the *fieri facias*, it would have been more than five years after the grant of administration, and therefore, too late; but we contend that there was no legal notice of the claim until the 3d June, 1844, when the present bill was filed.

The statute requires the " exhibition" of the debt or demand, and it is conceived means something more than saying to an administrator : " I have a claim against the estate you represent, and demand payment."

To *exhibit*, in ordinary parlance, means to *produce, show, offer to view*; and I am not aware of any technical signification different from this. It would, therefore, seem, that something more than the mere assertion of a claim or demand is requisite; the evidence of the debt or demand, or some specific statement of the character, origin, and extent of the claimant's demand, should have been presen-

ted to the administrator. This, we say, there is no evidence of, save by the filing of this bill nearly eight years after the grant of administration.

The letter of Meacham produced in evidence by the complainant, in answer to the alleged demand, shews, that the demand so called, contained no notice of the character of the claim made upon him.

It being conceded that the notice to creditors was duly given, and the complainant not alleging a presentment or exhibition of the demand within the time limited, and not bringing himself within the protection of the saving clause, the question is, can this claim or demand be now enforced in this suit?

Our statute acts upon "*all debts and demands,*" against the estate of the deceased; more comprehensive terms, it is conceived, could not well be employed to express the intention of the Legislature.

"*Debt*" is a word of known signification, and is used in law to express a sum of money due upon any contract, express or implied— "*Demand*" is a term still more comprehensive, and embraces a right of action beyond those which can be properly called debts. *In re* Denny vs. Manhattan Co., 2 Hill N. Y., 228.

As a release of *suits* is more large than of *quarrels* or *actions*; so, a release of *demands* is more large and beneficial than either of them. 2 Jacob Law Dict., 238.

But the class of debts and demands intended to be covered by the statute is still further described by the addition of the phrase "*of whatsoever nature*"—words of still more comprehensive import; as if the Legislature intended, as no doubt they did, to exclude the idea that there did, or should exist, any debts or demands which should form exceptions to the general rule laid down.

This section of the act of 1828, has never been directly before this Court for adjudication, but in the case of Gilchrist, Judge, &c., vs. Fillyau, it was incidentally considered in the determination of the question of the right of a bond creditor to sue the heir at law, and with which it seemed to be entirely connected, and to that case we refer for a portion of our argument. 2 Florida Rep., 98.

The statute is considered by this Court to be one of *repose*, and to be as equally available to the heir or distributee, as to the executor or administrator. And in this view, the decision is in accordance with the decisions of all the State Courts in which similar statutes have been adopted, and to which reference will hereafter be made.

This view, in our opinion, is fortified by reference to the 38th section of the act of November 20th, 1828, which immediately precedes, and seems to be intimately connected with, the one under discussion.

The 38th section allows the executor or administrator the period of six months within which to arrange the trust fund committed to his charge, and to ascertain the claims upon it, without let or hindrance from legatee or distributee. After that time he may be *compelled* to pay legacies and make distribution of the estate, provided the legatees or distributees shall give bond and security to refund a due proportion of any debt or demand which may afterwards appear against the estate, and all costs which may be awarded on the same : *Provided, that such debt or demand appear within two years from the grant of letters.*

Now, suppose the estate distributed immediately after the lapse of six months, and the distributees had given bonds to refund according to the requisition of the statute, and no debt or demand should be exhibited until after the two years had elapsed—could any recovery be had upon the bond according to the provision of the 38th section, unless the creditor should bring himself within some one of the clauses of the saving ?

Clearly not, for the undertaking of the distributee was to pay a due proportion only of such debts or demands as might be exhibited within the two years, and none were so exhibited. So, it would seem, if the legatee or distributee is unwilling or unable to give the bond and security provided for, he may leave his legacy or distributive share in the hands of the executor till the period of limitation elapses, and then demand and receive it—for all claims not then exhibited, are barred by the statute.

From this, it would appear, that the protection of those entitled to the estate as legatees or distributees is one of the principal objects of the statute ; and it also serves to make the creditor vigilant, and by early exhibition and prosecution of his claim insure a faithful and diligent action of the representative. *Vigilantibus non dormientibus, leges subveniunt.*

It was argued for the complainant in the Circuit Court, that the statute did not include a debt or demand of the character of that sued upon here, because, as it was alleged, the claim was a mere equitable one, and did not arise, or accrue, until after the surviving part-

ner had been pursued at law, and until after the expiration of the limitation of two years.

To this we reply : 1. We contend, that the right of suit or action, as well as claim, accrued on the maturity of the note against the estate of William D. Harrison, deceased.

We hold it to be the law, settled by weight of authority, that a partnership debt is, in equity, joint and several ; and that on the death of one partner, his executors or administrators may be sued without resorting to the survivor, and without the allegation of his insolvency. Collyer on Part., (new ed.,) 526, Book 3, Ch. 3, Sec. 4, § 576. Story on Part., 513, 514, 515. Bissett on Part., 150, 151. 3 Kent. Comm., (4th ed.,) 65. Braithwaite vs. Britain, 1 Keen R., 206. Thorp vs. Jackson, 2 You. and Coll., 553. Nelson vs. Hill, 5 How. S. C. Rep., 127.

We admit there are some American cases which seem to support the views of the counsel opposed to us, and which influenced the Judge below in his decision ; but it will be seen that a majority of these cases were decided upon what was then understood to be the doctrine of the English Courts of Equity. And when we advert to the fact that the establishment of the right of a creditor to resort to the estate of a deceased partner is one of, comparatively, modern date, we may expect contrariety of opinion during the progress of formation, and until finally settled.

An examination of the English cases will show some diversity of opinion both as to the principle and the reason upon which it was placed.

The first case is that of Lane vs. Williams, decided in Trin. T., 1693, and we presume from the date, by Ld. Keeper Somers. In this case the Court declared the joint debt to be a charge, in equity, against both partners and their separate estates ; nothing is said about the *necessity* of the surviving partner being insolvent, although it appears that he was so. 2 Vern. R., 292.

The same case is reported as having been decided by the Ld. Commrs. Rawlinson and Hutchins, in Mich. T., 1692 ; and from Mr. Raithby's note it appears that the executor of the deceased partner had taken a bond of indemnity from the survivor against all demands arising from the partnership, and which seems from the decree to have influenced the decision of the Court. 2 Vernon R., 277.

Fillyau and wife *vs.* Laverty.—Argument of Counsel.

The next case is that of Heath vs. Percival, decided in 1720 by Ld. Ch. Macclesfield, where, although the surviving partner was insolvent, that circumstance did not seem to enter into the reason of the Court for the judgment that the debt should be paid out of the estate of the deceased partner.   1 Peere., Willm., 682.

In Bishop vs. Church, decided by Ld. Hardwick in 1751, the survivor had never been sued at all, although the creditor had been desired to sue him and get in his money.   The Court held he was not bound to do so, although in this case the learned Chancellor held that the right to resort to the estate of the deceased was an equity which may be rebutted by circumstances, such as laches or collusion. 2 Vesey Sr., 100, 371.

In Hoare vs. Contencin, which was decided by Ld. Thurlow in 1779 ; he *doubted* the equitable right to proceed against the property of a deceased partner.   1 Bro. Ch. Ca., 27.

In Ex parte Kendall, decided in 1811, Lord Eldon expresses his surprize that where parties think proper to enter into a joint, instead of a joint and several contract, that Courts of Equity have not left that to its fate as a joint contract, and says it is an equity, subject, however, to many considerations.   17 Vesey, Jr., 518.

But in the case of Devaynes vs. Noble, the Master of the Rolls, (Sir Wm. Grant,) reviews all the preceding cases, and deduces the doctrine from them, that in equity, all joint contracts are joint and several.   And he scouts the idea that the previous pursuit by all possible diligence to obtain payment from the survivors, was the condition upon which a resort to the estate of the deceased partner was allowed—and this for obvious reasons stated by him.   Decided in 1816.   1 Merivale R., 562, 569.

This case was affirmed on appeal by Lord Brougham in 1831, who takes a distinction between mercantile and other joint contracts.   13 Eng. Chan. R., 114, 115.

The case of Devaynes and Noble was afterwards in 1833 fully recognized and acted upon in Wilkinson vs. Henderson, by Sir John Leach, M. R.   In this case the defence was, that there had been no effort to recover the sum due from the surviving partner—the Court held, he was not compelled to pursue him in the first instance, but might at once resort to the estate of the deceased.   7 Eng. Ch'y R., 176, 177.

This case was followed by that of Thorp vs. Jackson, decided by the very able bench of the Court of Exchequer, sitting in equity, M. Baron Alderson pronouncing the judgment of the Court, fully sustaining the previous cases of Devaynes vs. Noble, and Wilkinson vs. Henderson.    2 Young & Collyer R., 553.

The late Justice Story, in the case of Van Reimsdyk vs. Kane, 1 Gallison R., 371, which was decided in 1812, held that such a suit must expressly charge the insolvency of the survivor, but we find his more recent opinion in his Comm. on the Law of Partnership.    He says very decidedly, that the doctrine that the joint creditor had no claim in equity, except when the survivor is insolvent, has been overturned ; and it is now held that partnership debts are joint and several in equity, and that creditors may at once proceed against the representatives of the deceased partner, whether the survivors are, or are not, solvent.    Story Comm. oh Part, 514.

This doctrine has been fully recognized and acted upon in the Supreme Court of the United States, in the case of Nelson et al. vs. Hill.    5 How. S. C. Reps., 127.

Some of the cases decided in New York determine that a creditor may come into equity upon the insolvency of the survivor, but do not hold that the insolvency is essential.    Jenkins vs. Degroot, 1 Caines' Cases in Error, 122.    Hammersly vs. Lambert, 2 John. Ch. R. 508.

In the late case of Laurence vs. The Leake Orphan House, decided by the Court of Errors of that State, it is held that the insolvency is essential, but it will be seen, upon examination, that it was a case of fraud of peculiar character, and it was necessary so to determine, to avoid the general act of limitations.    The Court held it an equitable right, and which would only be barred by the statute of limitations, as to equitable rights of ten years.    The decision professes to be based upon the earlier English cases, but if we are not mistaken as to the effect of those decisions, the learned Court in New York certainly was.    2 Denio R., 577.

It may be as well to remark here, that there is no statute in New York similar to our statute of non-claim.

In the discussion of the case at bar before the Court below, this statute (39th section act of November 20, 1828,) so shocked the sense of propriety of the learned judge, that he declared his very great indisposition to give any effect to it, if it could be avoided.

His Honor compared it with the statute of Missouri, from which he was of the opinion it had been copied, with some alterations ; and which alterations, by shortening the period for exhibition of claims, had disturbed the harmony of the general system of limitations, and had deviated from the correct policy of the law in this particular, and ought not to have been passed.

Entertaining these views, it is not surprising that the learned judge below adopted the decision of the Supreme Court of Connecticut, in the case of Pendleton vs. Phelps, a note of which in the Digest fell under the observation of the judge in the course of his examination, as decisive of the present controversy. This case from the note cited, seems to have been decided upon what was understood to be the English decisions on the subject of the liability of a deceased partner's estate, as affected by the Connecticut statute of non-claim. 4 Day's R., 481.

It is most respectfully urged, that it cannot and ought not to be considered as authoritative precedent in our Courts, and under our statutes.

2dly. We insist—That if the right of action did not accrue until after the lapse of the two years limited, yet the liability or cause of action did exist before the intestate's death. It was *debitum in præsenti, solvendum in futuro.*

Our statute is broad enough to cover it, regarding it as a debt or demand, due presently, or in future—absolute, or contingent and conditional. It includes *all debts and demands of whatsoever nature.*

Under the Alabama statute of non-claim, it was held by the Supreme Court of that State, that there was no difference between an absolute and conditional liability, as to the necessity of a presentment to the executor, to prevent the operation of the statute of non-claim. King vs. Moseley, 5 Ala. Reps, 610. And to the same point is the decision of the Supreme Court of Connecticut, under the statute of non-claim of that State. Paine vs. Smith, 2 Root, 142. ·

3dly. We insist—That if the counsel for the appellee are correct in their position, that the cause of action did not accrue, as against the estate of William D. Harrison, until after pursuit of the survivor at law to insolvency, it then results, as a principle of equity, that the creditor should pursue the survivor with all possible diligence, and if there be any laches in this respect, the creditor should bear the bur-

11

den of the loss consequent upon it.    The creditor should commence his suit immediately upon the accruing of the right of action, and should, with good faith and diligence, pursue it against the survivor.

We refer here to the record exhibited by complainant with his bill, and show the negligence of complainant in pursuing his remedy at law against the survivor.

But we do not in any wise admit by this position, that we have any want of faith in our other points.

Similar statutes having been passed by several of the States of the Union, it is proposed to refer to them, and the adjudication of the Courts respectively, not as authoritative precedents, but in the hope that the view taken by the Courts of those States in the exposition and effect given to these laws, may afford some light to this Court in the interpretation and application of our own statute.    Massachusetts, New Hampshire, Connecticut, North Carolina, Missouri and Alabama, have all provided statutes of *non claim,* as they are termed ; and the judiciaries of those States have ever held them to be statutes of *repose,* designed to enforce a speedy settlement of the estates of deceased persons, and to quiet the possession of the residuum by the heirs and distributees.    Angell on Lim., (2d Ed.,) 167.

The statute of *Massachusetts* provides that no executor or administrator shall be held to answer any suit, unless commenced within four years after undertaking the trust.    Under this statute, it has been held that the administrator cannot waive the *bar* by a new promise, and so bind the estate.    Brown vs. Anderson, 13 Mass. R., 201.    Thayer vs. Hollis, 3 Met. R., 369.    Emerson vs. Thompson, 16 Mass., 429.

So, a license to sell real estate to pay a debt, barred by this statute, will not be granted to the administrator.    Scott vs. Hancock, 13 Mass. R., 162.    Ex parte Allen, 15 Mass. R., 57.    Heath vs. Wills, 5 Pick. R., 140.

So, infancy of claimant or creditor will not save the bar.    Hall vs. Bumstead, 20 Pick. R., 2.

So, it may be pleaded in equity as well as at law.    In a suit in equity brought by a surviving partner to be relieved from a promissory note given to the executor of a deceased partner for the supposed value of the share of the deceased in the joint estate, and which was afterwards discovered to be erroneous from mistakes, and from

the acts of the deceased in his life time in relation to the joint fund; held, the bar was effectual.  Burditt vs. Grew, 8 Pick. R., 108.

In New Hampshire, it is provided, that in case any creditor shall neglect to *exhibit* his or her demand against any estate to the executor or administrator within the term of two years next after proof of the will, or grant of administration, " such demand shall be extinguished, and the creditor totally barred from recovery of the same."

Under this statute the Courts of New Hampshire have held the statute a bar which can be waived by the administrator only at his peril; it does not bind the estate.   The statute, says the Court, was intended for the benefit of all interested in the estate of deceased persons.   Gookin vs. Sanborn, 3 N. H. Rep., 491.   Hodgdon vs. White, 11 N. H. Rep., 208.

Upon the subject of exhibition of demand, and when actual presentation of the claim, or its evidence will be waived—see Mathes vs. Jackson, 7 N. H. Rep., 260.

In Connecticut, the Court of Probate is authorized to fix a time for presentment of claims against the estate of a deceased person, not less than six, nor more than eighteen months.   And if claim be presented and disallowed, suit must be brought within six months after notice of disallowance, or it will be barred.   Rev. Stat. of Conn., 354.

It has been held that this statute is a *positive bar*, not removable like other statutes of limitation by a new promise, or a recognition of a subsisting debt.   The object of the Legislature was to compel early settlement of estates.   Spalding vs. Butts, 6 Conn. R., 28.

And it has been held also, that there is no difference between a *conditional* and *absolute* liability as to the necessity for presentment to the executor to prevent the operation of the statute of non-claim. Painter vs. Smith, 2 Root R., 142.

Opposed to the case last cited is that of Pendleton vs. Phelps before mentioned, which we think is not entitled to the importance claimed for it in the Court below.

In Alabama, the provision of the statute is, that all claims shall be presented to the executor within eighteen months after the same shall have accrued, or within eighteen months after the grant of letters testamentary, or of administration, or they will be forever barred; with a saving in favor of infants, *femes coverts*, persons insane, or

*non compotes*, and to debts contracted out of the State, and to heirs and legatees claiming as such.    Clay's Digest, 195, Sec. 17.

We have collected the following notes of decisions of the Supreme Court of Alabama upon this statute :

*As to presentation.*—A writ issued and afterwards abandoned, is not a presentation within the meaning of the statute.    Bigger vs. Hutchins, 2 Stewart, 448.

So, knowledge of the existence of the claim is not sufficient—nothing short of actual presentation will satisfy the statute.    Jones vs. Lightfoot, 10 Ala. R., 24.

*As to character of claim.*—Held to include judgments rendered in life time of deceased.    Ready vs. Thompson, 4 Stew. & Port, 52.

The statute runs from " the time the claim has accrued," not from the time the cause of action has accrued.    It has never been its construction that a claim which does not become one within eighteen months after the grant of letters shall not be presented within that time.    Such a construction would go far to defeat the beneficial purposes for which it was intended.    King & Barnes vs. Moseley, 5 Ala. R., 610.    Jones vs. Lightfoot, 10 Ala. R., 26.

*As to who may take advantage of it.*—A creditor or any other person interested in the distribution, has an equal right with the executor to insist on the plea.    McBroom vs. The Governor, 6 Porter, 32.    Jones vs. Lightfoot, 10 Ala., 24.    Thrash vs. Sumwalt, 5 Ala., 20.

The statute of North Carolina on this subject was enacted in 1789—for its terms and an exposition of it, see the opinion of Gaston, Judge, in Goodman vs. Smith.    4 Dev. Law R., 454.

The statute of Missouri, from which it is supposed by the learned judge in the Court below that our statute was copied, will be found in Geyer's Digest, 51.

If the surmise be correct that our statute had its origin from this act, upon a comparison of the two statutes, it will be evident that the Legislature of Florida was not satisfied with the provisions of the Missouri act, and were determined to advance the remedy which it proposed for the mischief of the common law, and therefore made important alterations.

1. To the terms, debts and demands, the phrase is added, "*of whatsoever nature,*" so as to include every species of claim.

2. It abridges the limitation from five to two years.

3. It excludes from the saving, all those without the limits of the United States, unless they be in the military or naval service during war.

Under this statute, it has been held that a person having a claim against the estate of a decedent, and wishing to give notice to the administrator of such claim, must state in his notice its nature, and whether he claims in his own right, or that of his wife. This case was that of a distributee. Dorsey vs. Burns, 5 Missouri, 334.

Where *cause of action* did not accrue until after the limitation expired, held not within the statute. Miller vs. Woodward, 8 Missouri, 176.

We take it, there is a difference between the *accrual* of the *right of action,* and that of the *cause of action.* In the case at bar, the cause of action accrued in the life-time of Harrison.

Again : The Missouri statute does not contain the important description to the debt or demand, " *of whatsoever nature,*" which is in our statute.

The limitation of three years is not for the personal convenience of the administrator, but for the benefit of those interested in the estate, hence it cannot be waived by the administrator. Wiggins vs. Lovering, 9 Missouri, 266.

*S. J. Douglas,* for appellee :

It is attempted to reverse the decree of the Court below, on two grounds :

1st. It is said that Wilder, the surviving partner of the firm of Harrison & Wilder, was a necessary party.

2d. That, under the act of 20th November, 1828, the claim of Laverty should have been presented to the administrator of Harrison, within two years after administration granted.

It is answered to the first objection, that all the cases cited on the other side to sustain the position assumed, were English cases, in which proceedings were had in the first instance against the estate of the deceased partner, and it was necessary to make the survivor a party, to bind him by the decree—to ascertain his liability, and that he might be present at the taking of the account, to defend and protect the interest of the joint effects. He is supposed to have a know-

ledge of the transactions, and the estate of the deceased partner is entitled to the benefit of his answer. But no case it is believed can be found, where the survivor is deemed a necessary party, after his liability has been fixed by a judgment at law. No decree could be rendered against him, and he would not be allowed to contest the judgment. The case in 2 Denio, 585, is in point. Butts & Havers vs. Geming and others, 5 Paige's Ch. Rep., 154.

The most important question to be considered is, whether the heirs and distributees of Harrison's estate are discharged from the payment of the complainant's demand, by reason of the provisions of the act of the 20th November, 1828, usually known as the act of nonclaim.

It will be remembered that the complainant is seeking to recover the amount of his debt from the distributees of Harrison, who are in equity trustees for this purpose, and are not entitled to the enjoyment of the estate of the ancestor, *except* the surplus of the assets, after the payment of all the debts. 2 Story's Equity Com., 498, section 1251.

The note given by the firm of Harrison & *Wilder* to complainant, is dated the 23d March, 1836, and payable twelve months from date. The death of Harrison took place some time in the month of May, 1836. In the month of November, 1838, the complainant, Laverty, instituted suit against Wilder, the surviving partner, and in December, 1841, there was a return of his execution, endorsed " *No property found.*"

The complainant then filed his bill in Gadsden Superior Court, against the administrator of Harrison, and the distributees of his estate, to recover the amount of his demand.

The first point to be considered and determined is, was the complainant right, in first resorting to the surviving partner and the joint assets, for the payment of his debt, or should he have proceeded in equity against the estate of Harrison, the deceased partner, before suing Wilder, the survivor, to insolvency ? Until recently this question, both in England and this country, would have met with but one response, and that is, that the surviving partner must be sued to insolvency, before the estate of the deceased partner could be called upon to discharge partnership debts. On this point, see the opinion of the Court in Pendleton vs. Phelps, 4 Day, 477. Lawrence vs.

Trustees of the Leake and Watts Orphan House, 2 Denio's Rep., 585. Sale vs. Dishmon's Executors, 3 Leigh, 553. Jenkins vs. Degroot, 1 Caines' Cases in Error, 122. Egbert vs. Woods, &c., 3 Paige's Chancery Reports, 517. Higginson, &c. vs. Air, 1 Desau., 427. 2 Robinson's Prac., 129, and, indeed, every case decided in this country.

It seems, however, that, by recent adjudications in England, the Courts have *permitted* the creditor, at his *option, and for his benefit*, and the more speedy recovery of his debt, to unite the representative of the estate of the deceased partner in the same chancery suit with the surviving partner, and have proceeded to take an account of the partnership effects, and settle the rights of parties. In these proceedings, the Courts still continued to keep the partnership funds separate and distinct from those of the separate partners. Let it be also observed that, even in the English Courts, this right on behalf of creditors to resort to the estate of the deceased partner in the first instance, is only *permissive,* and not *compulsory,* and in every reported case it was for his *benefit ;* and that the creditor may still, in the English Courts, *if he so elects,* pursue the surviving partner to insolvency, and then proceed against the estate of the deceased partner in the hands of the heir, and that he may adopt this course, without incurring the hazard of the statute of limitations, while pursuing the joint effects of the survivor. Winter vs. Innes, 4 Myl. and Craig, 111.

It will be seen from a careful examination of the decisions made by the Courts of the several States of the Union, that they have *uniformly held, without exception,* that in order to justify a creditor's filing a bill against the estate of a deceased partner, he must first follow the joint effects in the hands of the survivor, and only upon his insolvency do they allow the estate of the deceased partner to be resorted to. The question is now before this Court for the first time, and it is with it to determine whether they will adopt the recent English decisions, or follow the uniform current of decisions made in the United States. It is a matter for its consideration whether the *ultimate good* will outweigh the *hardship* in this individual case. Should the rule as established by the English Courts, be held to be more consonant with reason and the principles of equity, still it will be seen that there it is *only permissive* to the creditor for his benefit,,

and not *compulsory to his injury,* and that being permitted to elect between remedies, it has never been held to defeat his debt under the stringent statute of limitations. It is hoped that the very first application of the English rule in this country will not be to defeat the collection of a just debt by the creditor.

The case cited on the other side, of Nelson et al., vs. Hill, et al., 5 Howard S. C. Rep., 127, was a bill against the survivors of *one* of the firms, and the estate of the deceased partners, without first having resorted to the legal remedy against the survivor. In that case the Circuit Court sustained a demurrer to the bill, on the ground that the suit in the first instance should have been at law and against the survivor. The Supreme Court of the United States reversed the decision, and decided that the creditor has his *option.* It will be seen·that in this case, the *only* one decided in this country, the decision was to advance the rights of the creditor. There were other circumstances and facts in this case that made it one peculiarly proper to resort to a Court of Equity in the first instance. If it be true, as it doubtless is, that a suit against the surviving partner will keep alive the claim against the estate of the deceased partner, so as to defeat the general statute of limitations, will it not also apply to the act of non-claim, which it is conceded is a special statute of limitations ? It is said in the books that the equities between the partners, of which the creditors may have the benefit, will defeat the statute of limitations. Will not the same equities apply to the act of non-claim ? See the case of Winter vs. Innes, 4 Myl. & Craig, 111.

I shall next endeavor to show that whether the Court shall be of the opinion that the recent English decisions are the most reasonable, and are to be adopted in this State ; or whether they shall adhere to the decisions of the Courts of this country : still the claim of Laverty against the estate of Harrison, was not of that character and description of *debt and demand,* which, by our statute, should have been exhibited to the personal representative.

It would seem from the general law on the subject of the administration of estates, that this act of non-claim was·not so much designed as a new act of limitations, as it was intended for one of repose to the personal representative. It was desirable to appoint by law some time beyond which the personal representative, and those who signed his official bond, should not be liable to suit by creditors. The terms

used in the act of the 20th November, 1828, showed most conclusively, that this two year's act was not designed so much to *release the estate* of the deceased, as it was to release the representative from suit. It will be seen on examination, that this act differs materially in its provisions from similar acts in the other States, and more nearly resembles that of Missouri. In other States, their acts of non-claim apply only to creditors, while our's include not only creditors, but legatees and *persons entitled to distribution.* Now persons entitled to distribution are those entitled to the estate of the deceased, after the payment of his debts. Does the act design to *protect* the estate from those entitled to it ? Why protect it if they are not to enjoy the benefit of the protection ? Why protect their rights in order to defeat them ? Is it the object of the act to create a fund at the expense of creditors, to the enjoyment of which those entitled to it *may* never succeed ? Should those entitled to distribution not appear and claim within the two years, will the representative succeed to the estate, or will it escheat to the Commonwealth ? Should it be distributed to some of those entitled to distribution, will others, who are equally the objects of the ancestor's love and care but who did not claim within the two years, be barred and excluded from its benefits, or rather would not a Court of Equity cause those who had received it to refund a just proportion to their co-distributees? It would seem from these views that the object of the act of 20th November, 1828, was especially intended for the benefit and protection of the personal representative, and not designed to protect the estate by defeating such debts and demands as could not properly be exhibited to the representative, and paid by him. When a claim is of such a nature that it cannot be adjusted and settled by the administrator, then it is not such a debt and demand as the act designed should be exhibited within the two years, or be forever barred of recovery. Vide 6 Connecticut Rep., 258.

It is contended for the appellants that the act of the 20th November, 1828, is a statute of limitations. It is granted that it is a statute *limiting* the time in which the personal representative may be sued by the creditors of the deceased, but it is denied that it is a statute of limitations for the *estate itself*, against the claims of distributees, who in fact are the persons entitled to its enjoyment ; and, if not a statute of limitations as to them, with what propriety can it

12

be said to extend to *creditors*, seeing they are by the express terms of the statute placed on the same footing ?

All statutes of limitations are looked upon with jealousy and distrust when invoked to defeat a meritorious claim, and the Courts will never extend their provisions by *implication and construction*, but require parties relying on them to bring themselves most clearly within the benefit of their provisions ; and, indeed, where the Court can see that a statute of limitations will defeat a just demand, it will usually require a party to come within its very letter. No *latitude of construction* will be adopted in aid of such a statute. In the case now under consideration, the judgment and the return of insolvency against Wilder, the surviving partner, is the foundation of the bill. *No debt and demand* could properly be said to exist against the estate of Harrison, the deceased partner, until the survivor was sued to insolvency. Previous to that time, Laverty was the creditor of Wilder, the surviving partner, who, if he paid the debt, became, to that extent, a creditor of Harrison's estate for his *pro rata* proportion, and might maintain his action for contribution. West vs. Skip, 1 Vesey, Sr., 251.

This, at least, is the rule of proceedings as laid down by the Courts of this country without exception, and if a different one exists in England, it was only adopted, after much hesitation, and repeated conflicting decisions, and this Court will hardly, I presume, require a party to nicely balance the weight of authority, in order to escape the consequences of the statute of limitations. Courts have uniformly held that it was much better to adhere to decisions once made, even if erroneous, than by reversing individual cases to unsettle the law which had been long acquiesced in. In Devaynes vs. Noble, a case much relied upon at bar, Lord Chancellor Brougham says, "It is not upon slight grounds, certainly, that any Court, either of law or of equity, ought to loosen and unsettle that which has stood for so long a period as nineteen years. If it be true that even a prevailing error—what has been called a common or universal error—may be said to make the law, this at least may be allowed to be a sound foundation of the doctrine I am referring to, namely, that, unless a great and manifest deviation from principle shall have been committed, it may create much further mischief to reverse an individual case by way of correcting a slight error, *if that error has been acted*

*upon for a long series of years,* than to leave it as it stands; more especially, if the opinion of lawyers and the decisions of Judges have been ruled by it, and if, upon the analogies of that case, the same principle has been recognized and adopted in other cases, connected with and relating to it.'' Devaynes vs. Noble, 2 Rus. & Mylne, 495. 13 Cond. Eng. Ch. Rep., 144. It is believed that the language held by the Lord Chancellor in this case, is entirely applicable to the case before the Court.

The next question for consideration is, the nature and character of Laverty's demand against the estate of Harrison, the deceased partner. It is contended on behalf of the complainant, that in the case at bar, the debt and demand against the estate of Harrison, was *uncertain and contingent,* depending on the solvency of Wilder, the surviving partner, for had the surviving partner proved solvent, there never could have arisen any *debt or demand* against the estate of Harrison in favor of Laverty. In England, the true and legal test of insolvency is, 1st, By the party becoming a bankrupt, and 2nd, By a judgment and execution, and a return of *nulla bona.* See 2 Robinson's Practice, 130. Up to the time of the return of the execution against Wilder, Laverty had no debt or demand against the estate of Harrison. His *debt and demand* was against the surviving partner and the partnership effects, and not until he proved insolvent, did the right of action accrue to him against Harrison's estate. At that *instant of time, his contingent claim* against the estate of Harrison was converted into a debt and demand. His right to *exhibit* his claim and to *demand* payment from Harrison's personal representative, then for the first time *sprung into existence.* As against Harrison's estate it was *suspended and in abeyance* until Wilder, the survivor, proved insolvent—a mere *contingency* which might never happen. It remained *dormant* against the estate of Harrison until this period of time, and until the happening of the contingency; and then, and not until then, could the statute of non-claim begin to run. Vide Backus vs. Cleverland, Kirby, 36. Adams vs. same, do. 38. 6 Connecticut Rep., 258. Pendleton vs. Phelps, 4 Day, 477. Neil vs. Cunningham, 2 Porter, 171. 10 Alabama Rep., 24. 2 Denio's Rep., 585.

If, in the case under consideration, Wilder, the survivor, had been solvent, the firm being insolvent, and from his separate and private

fortune had satisfied and discharged the demand of Laverty against the partnership, could he not have maintained his action against Harrison's representative for contribution ; and would not the defence of the act of non-claim have been well answered, by replying that he had no debt or demand against Harrison's estate until satisfaction to Laverty, and until after the two years had expired ? In a case of this nature, the surviving partner, with full knowledge of the partnership effects and its liabilities, might well know that ultimately he would have to resort to the estate of the deceased partner for contribution ; and yet it would seem he might, notwithstanding the act of two years, maintain his action for this purpose. The cases stated in the books show most clearly that it is not every *debt and demand* that may *ultimately* come against an estate, that must be exhibited and made known to the personal representative within the two years, or be "forever barred of recovery." Take the common one of a surety on the bond of a guardian, or other fiduciary. A, as surety for B, makes good by suit or otherwise the deficiency of his principal. B. has been dead for many years before this deficiency is ascertained, and his estate has been distributed to those in interest. It cannot be that B.'s estate is discharged from the claim of the surety. True it is that B.'s personal representative is discharged from suit, but the estate in the hands of distributees is still liable.

This will serve to illustrate the position before taken, that the statute of two years was for the benefit and repose of the personal representative, and was not intended to discharge the estate in the hands of heirs and distributees from the payment of such debts of the ancestor as could not be exhibited to the representative. One of the most cherished principles upon which courts of equity act is, "that a man shall be *just before he is generous,*" and they will exercise all power in their hands to compel payment of debts, before enriching heirs and distributees.

I have presented the various questions involved in this case, as if the personal representative of Harrison had complied with the act of 20th November, 1828, and had given the notice required by its provisions. I shall now proceed to show that those who are seeking to avoid the payment of this claim, and are most *clamorous for rigid and stringent technicalities,* have not so complied with the statute as to entitle themselves to the benefits of its provisions. It will be seen

on reference to the act, Thomp. Dig., 206, that it contemplates two notices to be published by the administrator. The one, *required* by the 2d section, is to be published for the space of eight weeks, calling upon all persons having claims against the estate of the deceased, to present them without delay to the executor or administrator. The other, under the 6th section of the act, leaves it *optional* with the representative, but provides, *if* the representative *shall make* the publication for the space of four weeks, directed to *creditors, legatees and persons entitled to distribution,* then their claims and demands will be barred at the expiration of two years, unless exhibited within the same.

The only notice given by the representative of Harrison is a *general one,* to be found on the twentieth page of the printed record, which, he says in his answer, was published for the space of four weeks, *and longer.* On examination, it will be found that this notice cannot be held to be a compliance with the 6th section of the act of 20th November, 1828 ; it is manifest from its terms that it was not intended to be. It bears on its face the evidence that it was designed as a *general notice* to persons having claims against the estate of Harrison to make them known to the representative, preparatory to so arranging the affairs of the estate that it might be speedily settled. It is most apparent that the 6th section of the act was not in the mind of the representative at the time of giving the notice. It is much more like the notice *required* by the 2d section of the act, than that required by the 6th section. The first notice is *obligatory* on the representative, and may be general—while that under the 6th section is *optional* with the representative, and must be special. It wants the most essential requisite of a notice under the 6th section. It is not *directed to the persons* that the act declares shall be notified, and *legatees, and persons entitled to distribution,* are wholly omitted to be notified. It may be observed that this act is but one of many for the administration of estates in this State, and that, in order to give it a just construction, regard should be had to the entire legislation on this subject. The law requires that, in the event of the insolvency of an estate, a *pro rata* distribution shall be made among the creditors. Now, examine the notice given by Meacham, the administrator of Harrison, and it is most obvious that it was for the purpose of enabling him to ascertain the *condition* of the estate to meet this

requirement of law.   True it is, that all persons are warned that their claims will be barred of recovery unless presented within two years ; yet it is apparent, from the character and terms of the notice, that the representative had not in view the 6th section of the act, but his notice was designed to *quicken* debtors in paying, and creditors in presenting their debts, that the *condition* of the estate might be ascertained.

In conclusion, it may be observed that, if all the benefit claimed for the estate from the act of November 20th, 1828, was conceded, still, this being purely an equitable demand, the statute does not apply.   The right to pursue the estate of the deceased partner arises from the equities between the parties.   The estate is a trust fund in the hands of the heirs and distributees for the payment of debts, and it is contended that nothing but *laches* will defeat the creditor in pursuing it in their hands, and subjecting it to the payment of the debts of the ancestor.   His debt is a lien on the fund, which he can lose by his laches and neglect, and no statute of limitations will impair his rights.   See Story's Eq., 498, §1251.   Hamersley vs. Lamb, 2 John. Ch. Rep., 508.   Sale vs. Dishmon's Executors, 3 Leigh, 560.

In this last case, the Court say, the defendant having made no charge of *laches* in the answer, or any part of the pleadings, the question could not be examined by the appellate court.   See also 2 Robinson's Practice, 311.

*Archer*, on the same side.

The appellants seek a reversal of the decree on two grounds :

1st.  They say that Wilder, the survivor, should have been made a party.

2d.  They say the claim in this case should have been presented to the administrator within two years after administration granted on Harrison's estate.

In answer to the first objection, it is sufficient to say, that the cases cited on the other side are English cases, where there had been no judgment recovered against the survivors.   The only object in making the survivor a party is, that he may be present at the taking of the account of the amount due to complainant.   Such account in this case was taken by the recovery at law against Wilder.   The case in 5 Howard was the case of a creditor's bill, where only a part of the

claims had been reduced to judgment against the survivor of *one* of the firms. To have joined Wilder could have answered no useful purpose. The debt as to him, had been already ascertained, and no decree could be rendered against him.

Again : No such objection was taken by demurrer, or is insisted upon in the answer of the appellants. The objection comes too late.

*As to the second objection.*—The question is, how far the statutes of this State have cut off the right of a creditor to follow in equity the estate of a deceased debtor, as a trust in the hands of the administrator, or legatees, and distributees.

The statute of five years, it is admitted, does not apply in this case, and indeed is never applied in equity, unless there be a concurrent remedy at law. See cases cited by Hoffman, Vice Chancellor, in 2 Denio, 577.

But it is said the statute of two years, or of non-claim, amounts to a flat bar.

I say the statute of two years does not bar equities (where there is no concurrent remedy at law,) any more than the statute of five years.

The statute requires " all *debts and demands* of whatsoever nature," to be presented, &c., and also by implication from the proviso, the claims of distributees and legatees.

The terms *debt and demand,* mean, as I contend, money demands, on which an action at law may be sustained.

The terms *debt* and *demand* are used in our attachment laws, and also in the statute of set-off. It is true in one of the attachment statutes, debts and demands *not due* are spoken of, but this does not prove a different construction, independent of the qualifying words *whether due or not.* But could the claim in question against Harrison's estate be the *basis of* an attachment under either of the statutes, or could it be the subject of a set-off ? Certainly not.

The claim against Harrison was not a debt or demand within the meaning of either of these statutes of attachment or set-off. Why then should these identical words in the statute of non-claim, be construed to extend to Laverty's *contingent equitable* claim against Harrison's estate ?

The object of the statute undoubtedly is, to effect a speedy payment of debts to creditors, and a speedy distribution to the next of

kin, to terminate the office of the administrator within two years, so that·he may be protected.

The administrator cannot be protected except by providing against two classes of persons—*creditors* and *distributees.* He is effectually protected after distribution against any suit by creditors who do not exhibit their demands within two years from the date of his administration—for, when he distributes before the two years expire, he takes a bond of indemnity to protect him against all creditors who present their demands within the *two years ;* and this indemnity is as broad as his responsibility under such circumstances. And when he distributes after the two years, he is protected against all claims demanded after the *distribution,* for the distribution he may give in evidence against *subsequent* claims, under the plea of *plene administravit.* He is also protected against distributees, because although he may distribute to the wrong persons, the right persons cannot mantain a suit against him, unless they have brought their claims to the knowledge of the administrator before the two years expire, so as to enable the administrator to put the *surplus* in proper hands.

But because creditors, whose demands accrue after the two years, cannot compel the administrator to pay them, when he has previously parted with the fund ; or because the right persons entitled to distribution cannot have redress against the administrator, when they did not notify him of their claims—is it to be inferred that they have no remedy in equity against the *fund or assets ?*

The persons properly entitled to distribution, I take it, notwithstanding the want of notice to the administrator, and certainly the future *creditor,* could follow the fund in any hands, except those of a purchaser. 2 Story's Eq., 498, §1251.

Now, if our statutes required or authorized the administrator to take a bond from the distributees to refund for *any* future claims which might accrue, it might be inferred that all future suits were to be enforced against the administrator, (if any one could be found to take the office under such provisions,)—for the refunding bond in his hands might be construed to be assets, and thus create a continuing and indefinite liability. But the administrator is not required or authorized to take such refunding bond, and, consequently, is not held to such continuing liability. I maintain that while the administrator, who has parted with the fund by a distribution, is protected from suits on claims accruing subsequently, the *fund* is not protected.

Hence I say, that Laverty's claim is not within the operation of the statute of non-claim.

But it is said that a bill in equity might have been sustained against Harrison's administrator and Wilder immediately after the note became due, and therefore that there was such a demand as should have been presented within two years after administration granted. The note was not due until some nine months of the two years had expired, and there is no statute to meet such a case. 4 Day, 476. To argue that Laverty's claim against Harrison's estate must, under these circumstances, be presented within the two years, is to argue that he must also present any other claim accruing within that time, even within five days of the expiration of the time, and though the note be payable in New York, and it be necessary to present it *there*, in order to bind endorsers. The appellant's position in this respect cannot be correct—for a creditor is not bound to act upon the presumption that his claim will not be paid at maturity.

The more reasonable construction of our statute is, that debts and demands on which suits at law may be brought, must be presented within the two years—a period of time allowed to such creditors to come in. But that in reference to creditors whose claims accrue in such manner, or at such time, as not to allow them the full two years for presentation, there is no limitation, except such as may exist independent of the statute of non-claim. Our statute does not, like those of some of the other States, appoint a time for the presentation of *future* claims, contingent or otherwise.

But did *any right* to sue or claim, legal or equitable, accrue to Laverty, prior to the return of *nulla bona* on the execution against Wilder—or in other words, was not Laverty's claim against Harrison's estate dependent upon the result of the suit at law against Wilder?

Recent English authorities, and one American, have been cited upon the other side, to show that Laverty had a remedy in the first instance in equity against Harrison's estate, by joining Wilder, the survivor; but these cases do not show that it is *necessary* to resort to such remedy, to preserve the ulterior liability of the deceased partner's estate. Indeed, in every decision authorizing this resort to equity in the first instance, the *creditor* has been the party invoking that remedy. No decision can be found, even in England, where

13

the election of a different remedy is held to prejudice the rights of the creditor.

I understand the English decisions to amount to this, that, out of great consideration for the *creditor*, the Courts will *permit* a resort to equity in the first instance against the estate of the deceased partner, leaving his representatives to pursue the survivor ; *or* will permit the creditor to pursue the survivor to recover the amount of the claim, leaving him to settle his accounts afterwards with the representatives of the deceased partner. In other words, there are two remedies—the one at law, the other in equity—and the creditor may elect either at his option, but cannot pursue both. Such certainly is the view taken by the Supreme Court in 5 Howard, cited on the other side. The Court say—the creditor " may, at his *option*, proceed at law against the surviving partner, or go in the first instance into equity against the representatives of the deceased." To harrass the survivor by a suit at law and a suit in equity at the same time, on the same cause of action, would certainly seem to be contrary to principle. Besides, the suit at law against the survivor is virtually a proceeding against the estate of both parties, for the judgment and execution bind the joint property—at least, so it is considered in England—so far as to *preserve* the ulterior equity against the estate of the deceased partner. Winter vs. Innes, 4 Myl. and Craig, 111, cited in Collyer on Part., (N. E.,) p. 542.

But in equity, as well as in cases in bankruptcy, the English Courts recognize the prior lien of joint creditors on joint assets, and separate creditors on separate assets—principles which would seem to be *inconsistent* with the equitable remedy against the deceased partner in the first instance. Gray vs. Chiswell, 9 Ves., Jr., 118.

That the English doctrine is an invasion upon correct principles, is apparent from the language of Lord Brougham, in Devaynes vs. Noble. (13 Cond. Eng. Chy. Rep., 144.) Lord Thurlow and Lord Eldon would not have recognized the rule as an original question. The latter, indeed, expressed *surprise* at its introduction, and his *ignorance* of its origin ! It is apparent also that Lord Brougham had misgivings as to the correctness *upon principle* of his decision in Devaynes vs. Noble, and yet it is remarkable that in that case the *insolvency* of the survivors appeared upon the record. Lord Brougham seems to have made his decision upon the authority of *precedent,*

rather than upon the authority of principle, and certainly there was sufficient precedent to authorize the decision upon the *facts of that case*. But whatever may be the English rule, and its applicability to a case like this, in England, there can be no doubt that the doctrine of the American Courts fully sustains the complainant in the course he has pursued. 2 Denio, 577. 4 Day, 476. 2 Porter, 171. 6 Conn., 258.

The American rule is, that the deceased partner's estate cannot be resorted to until the remedy at law against the survivor is exhausted, or until the survivor *become insolvent*. This rule is consistent with the English and American doctrine governing the marshalling of joint and separate estates of partners, and is supported by irresistible reasoning. Besides, it has prevailed in the State where the contract was made, and also in our State where the contract is sought to be enforced. Lord Brougham says, in Devaynes vs. Noble, " unless a great and manifest deviation from principle shall have been committed, it may create much further mischief to reverse an individual case by way of correcting a slight error, if that error has been acted upon for a long series of years, than to leave it as it stands."

It is peculiarly the policy of the slave States to adopt the American rule, for generally the separate estate of the deceased partner in this country consists principally of slave property, the value of which to the family of the deceased cannot be replaced out of the partnership moneys.

It cannot be doubted that Laverty's claim in any of the States of the Union would not be considered within the statutes of non-claim, but as a contingent claim arising upon the insolvency of Wilder, which appears by the return of *nulla bona*. Even in Alabama, where the statutes of non-claim are most rigid, the case in 4 Day is approved, and such a claim as our's held not to be within the statute of non-claim.

As to the laches of Laverty complained of, see cases cited on the other side—and particularly 2 John. Ch., 508, Hamersly vs. Lambert—also the rulings of the Master of the Rolls, in Devaynes vs. Noble, 1 Merivale, 539, 572. Besides, no such objection is made in the answer of appellants, and no proof could have been taken to rebut any unfavorable presumptions.

As to the time of demanding payment from Harrison's estate, see 4 Day, 476.

As to what is a *presentation* under the statute of non-claim, see 8 Smedes and Marshall, 552.     8 Missouri, 176.

HAWKINS, J.

The case before us has been argued very elaborately and ably, and we have given it the consideration due to the importance of the questions involved in the discussion, an importance much enhanced from the likelihood of their frequent recurrence in practice in the Courts of our State.

The main points presented for decision are these :

1st. Whether on a bill filed by a creditor of a partnership against the representatives of a deceased partner, it is necessary that the surviving partner should be made a party to the bill after judgment against him at law.

2d. Can a creditor of a partnership, upon its dissolution by the death of one of its members, proceed, at once, in equity, against the estate of the deceased partner, without first showing the insolvency of the surviving partner ?

Besides these, there are other questions as to the forms of notices, to be given by executors or administrators to persons having debts or demands against the estate of their testator or intestate—the effect of the statute of non-claim in cases like the present ; the mode of exhibition of debts or demands against estates of decedents ; and the effect of the statute of non-claim where equitable rights are involved, or trusts actual or implied.

As to the first point, there can be no doubt but that the surviving partner should be made a party to the bill filed against the estate of the deceased partner, for the reason that he is interested in taking an account.   Story on Part., 515.   Story's Eq. Pl., 157.   Wilkinson vs. Henderson, 1 Mylne & Keen, 582, 589.   Burwell vs. Mandeville, Ex. 2 Howard S. C. R., 560, 575.   In the latter case, Judge Story remarks, " In general, the surviving partner is liable at law only, and no decree can be made against him, although he may be made a proper party to the suit in equity, as being interested to contest the plaintiff's demands, unless some other equity intervenes."

It is true, there had been a judgment at law in this case against the surviving partner and a return of *nulla bona* upon the execution, still he may have had effects of the firm in his possession not amena-

ble to the execution, such as liabilities and evidences of debts due the concern. It was moreover a new proceeding, and he might have had an interest in taking the accounts correctly, inasmuch as there might be a remedy over against him by the representatives of the estate by their being substituted in the place of the creditors.

The question whether the creditor of a partnership must in the first place pursue the surviving partner at law, before he can proceed in equity against the estate of the deceased partner, is one of difficulty, and from the fact that this is the first time that it has been presented for adjudication in this Court, we have duly considered it ; and we give, with due caution, our views on this embarrassing topic.

The old English doctrine on this subject, though not entirely clear and settled, was, that the joint creditor must, in the first instance, seek his redress against the surviving partner, and that he had no claim in equity against the deceased partner, unless the surviving partner was insolvent or bankrupt.

This doctrine was based upon the general principle that, the joint estate was the first fund for the payment of the joint debts ; and inasmuch as the joint estate vests in the surviving partner, the joint creditors, upon equitable considerations, ought to resort to the surviving partner before they should endeavor to obtain redress or satisfaction out of the *assets* of the deceased partner. Bishop vs. Church, 2 Vesey, 100. Ex parte Kendall, 17 Ves., 519. Story on Partnership, 514, and cases there cited.

This doctrine has been since contravened, and it is now held (says Judge Story,) that all partnership debts are to be deemed joint and several ; and consequently the joint creditors have in all cases the right to proceed at law against the survivors, and an election also to proceed in equity against the estate of the deceased partner whether the survivors be insolvent, bankrupt or not. Story on Part., 515.

This doctrine was first definitely settled in the case of Devaynes vs. Noble, 1 Mer., 593.

The case was pending many years, and was first decided by Sir Wm. Grant, and finally by Lord Brougham, 2 Russell & Mylne, 495. It was followed by other decisions to the same effect, and is now the settled and firmly established doctrine of the English law. Wilkinson vs. Henderson, 1 Mylne & Keen, 582, and other authorities cited on page 514, of Story on Partnership, and in the brief of counsel for appellants.

The English decisions upon this point have been adopted, as we have seen, by Judge Story, and regarded by him as settling definitely the law on the subject.   So, also, Chancellor Kent, in the 3d book of his Commentaries, page 64, uses this language :  " But relief may be now had in equity against the representatives of the deceased partner having assets, if the surviving partner be insolvent.   And it is now held, that a partnership contract, upon the death of a partner, is in equity to be considered as joint and several and to be treated as the several debt of each partner ;" citing in a note 3d Merrivale, 393.   3 Paige, 367 ; and in that note he says :  " A joint creditor may file a bill against the representatives of a deceased partner, though the survivor be not insolvent.   He is not compelled to sue the survivor in the first instance."   And then cites the cases of De-vaynes vs. Noble, Wilkinson vs. Henderson, 1 Mylne & Keen, 582, and other authorities.

We have been referred to some American cases by the counsel for appellee, going the other way, such as 2 Peters, 171.   2 Denio, 585. 6 Con., 258.   Pendleton vs. Phelps, 4 Day, 477, and others.   But to these stands opposed a very recent decision, Nelson, et al., vs. Hill, 5 Howard, 133.

The Court in this case uses this very cogent and explicit language: " It is now a rule of law too well settled to be shaken, that the cred-itor of a partnership may, at his option, proceed at law against the surviving partner, or go in the first instance into equity against the representatives of the deceased partner."

So, too, the Supreme Court of Alabama, in a case reported in 8 Al-abama Reports, 577, remarks :  " It is true,  by the common law, upon the death of a partner, the remedy was gone at law, against his personal representatives, but in equity the liability was held to con-tinue, and it is said could be enforced by bill whether the survivors were solvent or otherwise.   Story on Part., 514, and cases there cited.   Indeed in this respect, it is now recognized as the well set-tled doctrine, that there is no distinction between the debts due from partners and those due from other joint debtors.   In equity all are considered as joint and several, and the creditors may pursue the personal representatives of the deceased joint debtor or partner, whether the survivors are insolvent or otherwise."

The Court then refers to a decision in the case of Marr vs. South-

wick, et al., 2d Porter, 351, as having been made in opposition to the foregoing principles, and clearly by the above language expresses its dissent to that decision.

Upon a review of the whole subject, we feel constrained to side with the English rule, as adopted by the highest legal tribunals in our own country, and such text writers as Judge Story and Chancellor Kent.

We deem it consonant with reason and justice, that creditors should possess every facility of enforcing their demands against the estates of those who contracted the obligations, without being obliged to await the law's delay, by being forced in the first place to pursue the surviving partner, before they can come upon the estate of the deceased partner ; nor can we see any good reason why the death of one of the partners should place the creditor, as to the efficiency of his remedy, in a worse position than if the death had not occurred. Credit is far from being given in any instance to partners on account of their partnership effects, but creditors look, and they have a legal right to do so, not only to those effects, but to the separate property of the individual partners. The *lex mercatoria* regarded the contract of partners as joint and several, and Courts of Equity have, we think, very wisely adopted that principle. At common law, the rule was different, being then regarded as a joint contract. In Abbot vs. Smith, 2d Black., 949, Chief Justice DeGrey remarks, " that a contract when made with partners is originally a joint contract, but may be separate as to its effects, and that each is answerable for the whole, and not merely for his proportionable part."

Creditors certainly cannot complain because a two-fold remedy is afforded them ; nor should the heirs or representatives of the deceased partner be querulous—for we cannot see that any prejudice can accrue to them, by the ability of the joint creditors to render them primarily liable ; for if the estate of the surviving partner be solvent, they have a remedy over by virtue of the subsisting equities ; and if it be insolvent, it is very certain that the estate of the deceased partner is liable to the payment of the debt. Sir John Leach, in the case of Wilkinson vs. Henderson, 1 Mylne & Keene, 582, bases his decision upon the ground—" that the estate of the deceased partner is, at all events, liable to the full satisfaction of the creditors, and must, first or last, be answerable for the failure of the surviving part-

ner; that no additional charge is thrown upon the assets of the deceased partner by a resort to them in the first instance, and that great inconvenience and expense might otherwise be occasioned to the joint creditors."

Besides the foregoing reasons, we coincide with the modern rule, as being more compatible and more in consonance with the policy of our statutes, in relation to the settlement of estates of deceased persons. It is the province of every Court, where the policy of law is clearly discernible, to carry out that policy, unless militating against the letter and spirit of the Constitution. Cases of individual hardship may, no doubt, occasionally arise, from the enforcement of this principle, but this is preferable to the infraction of the laws, regulations, or policy of a State.

All our statutes in relation to the estates of decedents bear upon their face the determination, that estates shall be settled as speedily as possible. The Legislature saw the evil results which would almost inevitably ensue, if estates remained a long time unsettled, arising from the expenses of administration, the detention of property from the legitimate and appropriate owners, the presentation of stale demands, and the litigation springing out of them.

To obviate these mischiefs, various statutes were passed, all having the same objects, all converging to one point, the speedy settlement of estates. Among them is the one invoked by the appellants, which is in the following words : "All debts and demands of whatsoever nature, against the estate of any testator or intestate, which shall not be exhibited within the said two years, shall be forever barred : *Provided,* That the executor or administrator shall, by advertisement, to be published once a week for the space of four weeks, in some newspaper printed in the State, give notice to all creditors, legatees and persons entitled to distribution, that their claims and demands will be barred at the expiration of the period aforesaid, unless exhibited within the same"—with a saving to married women, infants, &c.

Much stress is laid upon the fact, that this statute is of a stringent nature, but for that reason it is not to be disregarded; and if the law-making power prescribes a rigid rule, a corresponding rigid observance must follow, and is as much a duty, as though the rule was more mild, qualified, or equitable. Legal morality can draw no distinction.

This statute is virtually a statute of limitations, passed not only for the security of the legal representatives, but for the benefit of the heirs and distributees, to effect the speedy and final settlement of estates.

By it, and the statute preceding it, (section 2,) the executor or administrator is enabled to ascertain what debts or demands are due by the estate, so that he can discover whether the estate is solvent or not; while it enables the distributees or legatees to demand distribution of the estate, unless it be necessary for the administrator or executor to retain it longer in his hands, for the purpose of paying debts.

If a creditor of a partnership, in case of its dissolution by the death of one of its members, was obliged to exhaust his legal remedies against the surviving partner, before he could proceed against the estate of the deceased partner, the result would be, that the estate would necessarily be kept open and unsettled in many instances for a long period, owing to tedious litigation; and this would be, we have seen, against the policy, and I may add also, the explicit declarations of our statutes.

The statute, too, seems to have contemplated the idea that legatees and distributees should take their portions, discharged from all claims not exhibited within two years; because the bond they give, upon receiving their portion, refers to debts or demands appearing within two years, after granting the letters testamentary, or letters of administration.

If, therefore, the contract of partners be joint and several in equity—if the joint creditors can proceed primarily against the estate of the deceased partner, and such we deem the law to be—we are clearly of the opinion that such creditor should exhibit his demand within the time prescribed by our statute. Having an option, he should exercise it; possessing a right, he should pursue it, within the terms of the law. If he does neither, he waives his remedy, and is estopped by a statute, as obligatory in a Court of Chancery as at law.

As to the form of the notice published by Meacham, the administrator of Wilder, we deem it sufficiently correct. It is in these words: " All persons having any claims against the estate of William D. Harrison, deceased, are hereby warned to present them to the subscriber within the time prescribed by law, or they will be forever

barred of recovery ; all those indebted to the estate are requested to make immediate payment." It embodies, we think, substantially the requirements of the statute ; and although it does not contain the words, " creditors, legatees and persons entitled to distribution," still we think the words, " all persons having any claims against the estate," are of so comprehensive a character, that they include and embrace within their meaning, " creditors, legatees and persons entitled to distribution," upon the principle that the *major* includes the *minor*.

The statute prescribes two notices, one to be published four the other eight weeks. Whether the one to be published for the latter period was so published or not does not appear, but the one before the Court, from its substantial conformity to the requisitions of the section containing the statute of non-claim, must be taken by the Court as a sufficient compliance with the proviso of that section.

By the first statute (sec. 2,) the advertisement is merely directory, while by the second (sec. 6,) it is the condition upon which, on its being complied with, the statute applies as to barring debts or demands. As to the question, what shall constitute an exhibition of a debt or demand against an estate, we think there should be actual presentation of the claim within the time prescribed, or something done by the party equivalent to it.

The presentation need not be in any particular form, but sufficient to give such notice to the executor or administrator of the existence of the debt or demand, its character and amount, as would enable him with reasonable certainty to provide for its payment. Mere knowledge on the part of the executor or administrator of the existence of the claim is not enough. The party holding the claim or demand must pursue some measures to present his demand, and not remain passive, or sleep upon his right. The bringing a suit or action at law or in equity, we would regard as equivalent to an actual presentation, and we think that a debt, though not due, is embraced within the intention of the statute. In this last point, we are sustained by the decisions in Alabama. Jones' Ex'rs vs. Lightfoot, 10 Ala. R., 26. King & Barnes vs. Moseley, 5 Ala. R., 610. Pinkston vs. Huie, 9 Ala., 262.

The Court, in the case of Pendleton vs. Phelps, indicates an opinion in accordance with the one by us expressed, for it remarks :

" This is different from the case of a demand payable at a future period.   We think that the words " debts or demands," clearly cover debts not due.   If A promises to pay B fifty dollars in a year from the date of the promise, it certainly creates a debt on the part of A. It is the obligation or contract that creates the debt.   In the words of counsel it is *debitum in praesenti solvendum in futuro.*"

It is said that the statute of two years does not bar equities (where there is no concurrent remedy at law) any more than the statute of five years, and that the heirs and distributees of Harrison's estate are trustees for the debt due by their intestate as a member of the firm of Harrison & Wilder.

By way of response to these propositions we will cite the case of the Executors of Fisher vs. the Executors of Tucker, 1 McCord Ch. R., 169.

It was in the first place decided by Chancellor Wattes, and afterwards affirmed on appeal in the Court of Appeals in South Carolina. The circumstances of that case are very similar to the one at bar. Heriot and Tucker were copartners in trade, and they became indebted to James Fisher in the sum of £1100.   Tucker, one of the firm, died, leaving Heriot the surviving partner.   A bill was filed against the estate of Tucker by the Executor of Fisher, the creditor, on not being able to procure payment from Heriot, alleging his insolvency.   The defendants rested their defence upon the statute of limitations.   The Chancellor uses this language :  " The books furnish no case in which a Court of Equity has ever felt at liberty to dispense with the operation of the statute against a legal demand, unless there has been some extrinsic equity to authorize it.   The cases are numerous to the contrary, but I will only refer to the following :  In Read vs. Read, 5 Ves., 744, the Court would not, on a bill for mesne profits, decree an account for more than six years, *because more could not be recovered at law.*   And it is then said that the circumstance of being obliged to sue in equity, does not alter the nature of the action for mesne profits.   And in Hovenden vs. Amnesly, 2 Sch. & Lef., 630, Lord Reddesdale says :  " Courts of Equity are bound to yield obedience to the statute of limitations upon all legal titles and legal demands."   " It is manifest that the present demand was originally a legal one, and the circumstance of bringing it into this Court will not, as was said by the Court in the

case of Reade vs. Reade, alter its original nature. It is stated to have been for goods sold to the firm of Heriot and Tucker, the remedy for which was exclusively a legal one while the partners were alive, or while the survivor of them was solvent." The Chancellor decreed that the bill be dismissed.

Sir Thomas Plummer, Master of the Rolls, says, that after a bar has been fixed by statute to the legal remedy, the remedy in a Court of Equity in analagous cases has been confined to the same period· He then stated it to be clear that had the claim in question before him been a claim of a legal estate in a Court of law, the remedy would have been barred by the statute of limitations, and it was therefore, clear, that being an equitable claim, the remedy was equally barred in a Court of Equity. 3 Brown Ch. R., 630. Angell on Lim., 24.

"Courts of Equity," says Lord Reddesdale, "are not within the words of the statute, because the words apply only to particular legal remedies, but they are within the spirit and meaning of the statute, and have been always so considered." Angell on Lim., 25.

"Whenever," says Sir Thomas Plummer, "any statute has fixed the period of limitations, by which the claim, if it had been made, in a Court of law, would have been barred, the claim has by analogy, been confined to the same period in a Court of Equity." And the Supreme Court of the United States say, that Courts of Equity are no more exempt from statutes of limitations than Courts of law. Ib. 26. Melicot vs. O'Donnel, 1 Ball & Beatty, 156. Thomas vs. Heirs of Harvie, 10 Wheat., 149. Ib. 168, 170. 3 Bro. Ch., C., 639, note. 4 Harrington, 274.

The contract of partnership is dissolved by the death of one of the partners. At law, the estate of the deceased partner cannot be proceeded against by the joint creditors, because the contract being joint, all the original parties should be joined. Of course, the surviving partner cannot be, because different judgments would have to be given. The resort of the joint creditor against the estate of the deceased partner must be in equity. Now does this, as a result, change the original legal contract into such an equity as to prevent the bar of the statute ? A change of remedy from one at law to one in equity, should not have such a result, and more especially in the face of the words of the statute " all claims or demands of whatsoever nature."

To say that the statute should not be a bar in a case like the present, would be an evasion of it. The pleadings create an issue of fact, whether the claim or demand was presented or not within the two years. It is not pretended that it was presented until the 6th December, 1841, being after the expiration of the term prescribed by the statute.

We consider the other point, that the legatees and heirs of Harrison are trustees for this demand, as untenable. There is certainly no express trust, and if one is merely constructive, the statute does apply.

In the case of Townshend vs. Townshend, 1 Brown C. C., 554, the Court say—"Then, as to trusts being an exception to the statute of limitations, the rule holds only between trustees and *cestui que trusts*. It is true that the trustee cannot set it up against his *cestui que trust;* but this is merely the case of a trustee by implication, and as such, affected by an equity—but that equity must be pursued within some reasonable time. Both courts of law and equity preserve an analogy to the statute of limitations."

In Lockey vs. Lockey, Prec. in Ch., 518, the Lord Chancellor was of opinion, that when one receives the profits of an infant's estate, and six years after he becomes of age he brings a bill for an account, the statute of limitations is as much a bar to the suit, as it would be to an account at law.

In Webster vs. Webster, 10 Ves., 93, a bill for an account and payment of a debt was filed against defendant, who pleaded the statute, and though regarded in equity as a trustee, the plea was held a good one. See also 194-5-6 of Angell on Limitations.

These authorities are cited in the case in 1st McCord, already referred to, and the Court in that case also confirmed the views we have taken as to this last question.

With these views, we think, therefore, there was error in granting the decree in the Court below, and it is ordered, adjudged and decreed that the bill of complainant be dismissed.